HALL and others *v.* SUPREME LODGE KNIGHTS OF HONOR.

*(District Court, E. D. Arkansas.* July 9, 1885.)

1. BENEFICIAL SOCIETIES—SUSPENSION OF LODGES OF BENEFICIARY ORDERS.

If the laws of a beneficiary order authorize an officer or tribunal of the order to suspend a subordinate lodge for certain causes, and a lodge is suspended by such officer or tribunal for such cause, after due notice of the proceedings is given to the lodge, a mere error in the finding of facts, or an erroneous application of the law to the case, which might be corrected on appeal in the mode provided by the laws of the order, will not vitiate the proceedings, nor cause them to be subject to collateral attack in any tribunal; but a suspension by an officer not vested by the laws of the order with that power, and without notice to the offending party, is absolutely void, and cannot affect the legal rights or change the legal *status* of any one, and from such an order of suspension no appeal is necessary to save the rights of parties. *Karcher* v. *Supreme Lodge*, 137 Mass. 368, distinguished from this case on the facts.

2. SAME—EFFECT OF TENDER OF ASSESSMENTS BY SUBORDINATE LODGE.

A tender of an assessment by a subordinate lodge, which is refused, is just as effectual to preserve the rights of a lodge and its members as if it had been accepted. It does not have to be repeated; the burden to act after tender and refusal is on the creditor, and the debtor is only required to be ready to meet the demand when made.

3. SAME—GOOD STANDING AND PAYMENT OF ASSESSMENTS.

In beneficiary associations, where the time and frequency of payments depend on the mortality of members, and are to be made only upon notice that an assessment is required, no liability is imposed on a subordinate lodge or its members until due notice in conformity with the laws of the order is given, and good standing is not lost by a failure to pay an assessment of which no notice was given through the fault or misconduct of the supreme lodge or its officers.

At Law. Plaintiffs sue as the heirs of Joseph Hall, who was, in 1880, a member of Harrisburg lodge, No. 1,714, of the Knights of Honor, and claim the sum of $2,000 as a benefit. The case was

tried before the court, which found these facts: (1) That in July, 1879, Joseph Hall was duly admitted as a member of Harrisburg lodge, No. 1,714, Knights of Honor. (2) That said Hall died on the second day of July, 1880, and before his death directed his benefit certificate to be made payable to the plaintiffs, who are his heirs at law. (3) That assessment No. 65, called January 1, 1880, was paid by the lodge to the supreme treasurer in apt time, and that Hall paid his share of said assessment to his lodge in apt time. (4) That assessment No. 66, called January 31, 1880, was forwarded by Harrisburg lodge to the supreme treasurer in apt time, and was received by said treasurer, who returned the same, saying, contrary to the fact, that the lodge was in arrears for assessment No. 65. Thereupon the lodge again forwarded assessment No. 66, with proof of payment of No. 65. The supreme treasurer again returned assessment No. 66, reiterating the erroneous statement that No. 65 had not been paid; and on March 15, 1880, the supreme reporter, without previous citation or notice, suspended Harrisburg lodge for non-payment of assessment No. 65. Hall paid to his lodge assessment No. 66 in apt time. (5) Assessments were called in by the proper officer of the supreme lodge subsequent to No. 66, and before Hall's death, as follows: March 1st, No. 67; April 1st, No. 68; May 3d, No. 69; and June 12th, No. 70; but no notice of these assessments was sent to Harrisburg lodge, and neither that lodge nor Hall had any notice of said assessments or calls prior to Hall's death. (6) There was some correspondence between the officers of Harrisburg lodge and the officers of the Supreme lodge in relation to assessment No. 65, and the controversy was continued up to the time of Hall's death. Subsequent to Hall's death, Harrisburg lodge, by surrender or abandonment of its charter, ceased to exist. It was agreed that the plan upon which the benefit feature of the order is conducted is as follows:

"A fund called the 'Widows' and Orphans' Benefit Fund' is raised by contributions paid in by the members in response to assessments made upon them, and this fund is scrupulously and exclusively devoted to the payment of death benefits to the person directed and named by the deceased member as his beneficiary. All the current expenses of conducting this and all other departments of the order are paid out of another fund called the 'General Fund.' Upon due notice by any subordinate lodge, with proof of death of a member in good standing, the Supreme lodge draws an order on the W. & O. B. fund for the payment of the benefit of $2,000 to the beneficiary. So long as the amount of money in that fund, not subject to and covered by such orders, exceeds the sum of $2,000, no further assessments are made upon the members. When that amount falls below that sum, an assessment is made upon all the members, each member being called upon to pay the same sum as previously stipulated; and the aggregate of these contributions, when collected. is again devoted to the payment of death benefits as before. The W. & O. B. fund is realized alone by the means here stated. Each member pays one assessment when he becomes a third degree member, but this assessment remains in the subordinate lodge treasury until the time arrives when the amount in the supreme treasury to the credit of the W. & O. B. fund, not covered by orders drawn to pay on deaths occurring before the time such

member took the third degree, falls below $2,000, and a new assessment is called, and thus the first assessment thus paid in by such new member receives its proper consecutive number, and is forwarded to the supreme treasurer with other contributions on the same assessment, and thus goes into the W. & O. B. fund; and the new member is called to pay his second assessment when the exigencies of the W. & O. B. fund require a new general assessment under the plan above stated."

*Stephenson & Trieber*, for plaintiffs.

*James O. Pierce*, for defendant, argued:

1. Hall was not, at his death, a member of the order in good standing. "Good standing," in the sense of the laws of the order, has a definite and well-understood meaning. To be in good standing the member must have paid every assessment to date within 30 days after it was called for, all regular dues for the particular period, and all fines that may have been imposed. Good standing is lost by the failure of the member to pay assessments. *McMurry* v. *Supreme Lodge*, 18 Cent. Law J. 372; S. C. 20 FED. REP. 107; *Madeira* v. *Mutual Ben. Soc.* 16 FED. REP. 749; *Benevolent Soc.* v. *Baldwin*, 86 Ill. 479. It is lost by a suspension in regular form not appealed from. *Karcher* v. *Supreme Lodge*, 19 Cent. Law J. 152; S. C. 137 Mass. 368.

2. Hall was not, at his death, a contributing member to the W. & O. B. fund. It is a fundamental feature of the beneficiary department of this order that the duty of contributing to the benefit fund, and the right of sharing therein, are reciprocal. The plan on which this department operates is fully set out in evidence in the stipulation of counsel. It will be seen that the only fund provided for the payment of death benefits is raised by contributions, and that the insurance is in force as to each member during only the time his contributions are in hand. When the contributions made in response to any one assessment are exhausted, the insurance thereby effected has expired. With a new set of contributions a new insurance is effected, to exist until these contributions are in turn exhausted. This is "current" or "term" life insurance, in the strictest sense. It is the cheapest possible insurance, viz., insurance at actual cost. In this and some other respects, the order differs from an ordinary life insurance company. It has no capital stock, no reserve funds, no corporate property. It has no funds of any sort out of which to pay death benefits except the contributions of the members, which it is commanded to and does distribute specifically. So, also, the contract is substantially different from the common form of life insurance contract. The order did not make a positive and unconditional contract with the member to pay in any event. It did not receive any adequate consideration for such a contract. If such a contract had been made, it would have been *ultra vires*. Nor did the order make any contract positive in form, but on conditions for its benefit, which it had the power to waive. No doctrine of waiver of hard conditions can be here appealed to. Nor did the order receive any consideration for a contract which should allow the member any "surrender value," or any other interest of any kind beyond the day when his contributions should be exhausted. The character of contract actually made is shown by the constitutions and laws of the order, the general plan of operations of the W. & O. B. fund, and form of benefit certificate in use. It was a contract to receive Joseph Hall's contributions, and to insure, as long as such contributions remain unexhausted by distribution, the beneficiaries of Hall and each of his fellow-members who should die during such limited period.

The money collected on each assessment by the subordinate lodges is to be forwarded by them to the Supreme lodge. There it is subject to drafts or orders for the payment of benefits on deaths due notice of which has been re-

ceived. No member can be called on to contribute to pay for deaths occurring prior to the date when he himself became a beneficial member. No new assessment can be ordered forward while there remains in the W. & O. B. fund a sum sufficient to pay the next death benefit. When that sum proves insufficient, the lodges are to forward the assessment then held by them, and call in a new one. That small balance remaining on hand is of course exhausted by the payment of the first death benefit after the call for the new assessment. Thus a limit is fixed, at the beginning as well as at the ending of the distribution of every particular assessment, by which the officers can ascertain the persons who are to share in such distribution. There is no place or opportunity allowed for sharing in any distribution by the beneficiary of any member who was not a contributor to the fund at the time of his death. Contribution and distribution are reciprocal.

The legality or fairness of this contract cannot be questioned. It was a contract for insurance at absolute and exact cost. This could be obtained in no other way. In some old-style life insurance companies, broader rights and privileges might be secured, but at greater cost. To obtain term life insurance at its exact cost, nothing else than term life insurance, in exact form, can be expected. Hall took this cheapest of all forms of life insurance, and he might have preserved it by continuing to pay for it, but not otherwise. "Payment of the assessments by the members is essential to the successful operation of the Widows' and Orphans' Benefit fund of the order, as the plan of the same is exhibited in the constitution and laws of the order." *McMurry* v. *Supreme Lodge,* 18 Cent. Law J. 372; S. C. 20 FED. REP. 107. "The obligatory part of the contract is unilateral; payment of assessments is wholly optional with the members." *In re Protection Life Ins. Co.* 9 Biss, 188; 9 Ins. Law J. 145; *A. O. U. W.* v. *Moore,* 9 Ins. Law J. (Ky.) 572.

3. Defendant controls trust funds only, which are collected and designated for specific purposes. It does not avail to say that defendant contracted to pay. It did not so contract in any general sense. It made no contract at all with the plaintiffs. It contracted with Joseph Hall *sub modo;* that is, to do what he and his fellow-members authorized it to do, which was to recover and disburse trust funds for specific purposes. There has been in this case no deviation or spoliation of trust funds, or violation of a trust, such as will authorize a money judgment against the trustee. *In re Protection Life Ins. Co.* 9 Biss, 188; *State* v. *Standard Life Ass'n,* 38 Ohio St. 281.

4. No consideration need be given to the question of the regularity of the suspension, because no appeal was taken within the order. The laws of the order make ample provision for the prosecution of appeals and redress of grievances within the order, (Const. Sup. Lodge, art. 1, § 2, art. 9, § 6;) and those who fail to avail themselves of the opportunity thus offered for the redress of grievances within the society will be repelled from the courts. *Karcher* v. *Supreme Lodge, supra; Chamberlain* v. *Lincoln,* 129 Mass. 70; *Lafond* v. *Deems,* 81 N. Y. 507; *Robinson* v. *Yates City Lodge,* 86 Ill. 598; *Harrington* v. *Benevolent Ass'n,* 27 Alb. Law J. 438, (Ga. Sup. Ct. April 24, 1883;) *State* v. *Knights Golden Rule,* 16 West. Ins. Rev. 474.

CALDWELL, J. This case arose under the constitution and by-laws of the order in force in 1880. Tested by these laws the alleged suspension of Harrisburg lodge by the supreme reporter was a nullity. It was not merely irregular, but it was a void act. The constitution and by-laws then in force conferred no jurisdiction upon the supreme reporter to suspend subordinate lodges in any case, or for any offense; and his mandate suspending Harrisburg lodge had no more effect, inside or outside of the order, than if it had been made by one who did

not belong to the order. Article 9, § 1, article 15, § 1, Const. 1879. Moreover, it was made without giving the lodge an opportunity to be heard, and for an alleged ground that had no existence in fact. If the supreme reporter had been invested with jurisdiction to try and suspend lodges, and he had given Harrisburg lodge due notice of the proceedings, the fact that he erred in judgment in the application of the law to the case, or in his finding of facts, would have been a mere irregularity, which might have been corrected on appeal, or in such mode as the constitution provided; but until his judgment was reversed by the appropriate supervisory power it would be conclusive on the parties, and not subject to collateral attack in any tribunal. This is nothing more than the application to the decrees of these organizations affecting their members of the familiar principles that obtain in relation to the validity and effect of judicial determinations of controversies between citizens in the courts. If the court has jurisdiction of the subject-matter and the parties, its judgment, however erroneous on the law and the facts, concludes the parties unless appealed from. But, if jurisdiction over the subject-matter and person is wanting, its judgment is a nullity. The case of *Karcher* v. *Supreme Lodge*, 137 Mass. 368, S. C. 19 Cent. Law J. 152, is grounded on this rule. The court in that case say:

"Karcher was suspended by the tribunal which he had chosen to determine the question according to rules to which he assented in becoming a member, and he received notice of the proceeding. The action of this tribunal according to its rules, on a question which it had authority to decide, honestly taken, after the requisite notice to him, cannot be collaterally reviewed in this court on the ground that facts existed which, if brought to the notice of the tribunal, would have warranted or required a different decision."

None of the prerequisites here laid down as necessary to the validity and conclusiveness of a decree of one of these tribunals exists in the case at bar. By the laws of the order in force at the date of this transaction, neither Harrisburg lodge nor Hill consented that the supreme reporter should have jurisdiction to try and suspend lodges, with or without notice. The action of the supreme reporter in suspending Harrisburg lodge was not taken according to the laws of the organization; it was not a question which that officer had authority to decide, and it was, moreover, taken without notice. It was not merely an erroneous proceeding on the part of that officer, but a usurpation which cannot affect the legal rights or change the legal *status* of any one. *Agnew* v. *Grand Lodge A. O. U. W.* Missouri Court of Appeals, 1885. Harrisburg lodge was not required to appeal from such an order of suspension. The obligation to appeal is not imposed where the judgment is void for want of jurisdiction. It may be likened to a judgment rendered by a court which has no jurisdiction of the subject-matter or the person. No appeal or writ of error is necessary to get rid of such a judgment; it is void in all courts and places. The lodge, therefore, did right in ignoring the so-called sus-

pension, and forwarding assessment No. 66, as was done. This assessment was forwarded twice, and returned each time. The grounds assigned for this action were two: *First,* that assessment No. 65 had not been paid; and, *second,* that the lodge was suspended. Both the grounds were without foundation in fact. Assessment No. 65 had been paid, and the lodge had not been suspended. The tender of assessment No. 66 was just as effectual to preserve the rights of the lodge and its members as if it had been accepted. For the purpose of avoiding penalties and forfeitures, or the loss of any right or privilege, a tender is the exact equivalent of payment. It does not have to be repeated. After tender made, the burden is on the creditor to act; he must demand the debt, and it is only required of the debtor to be ready to meet the demand. No demand of assessment No. 66 was ever made after it was returned to Harrisburg lodge. For the purposes of this case, therefore, that assessment must be treated as paid. Other calls were made, as stated in the fifth finding of fact, before Hall's death, but notices of these assessments were not sent to Harrisburg lodge, as required by the constitution and by-laws of the order. The officers of the Supreme lodge, supposing Harrisburg lodge was suspended, sent that lodge no notice of assessments after No. 66.

In the case of ordinary life policies, the company is under no obligation to give the assured notice of the amount and maturity of the premiums accruing on the policy, because the policy fixes definitely the amount of the premiums and the time of their payment, and the assured is bound to know these facts. *Thompson* v. *Insurance Co.* 104 U. S. 252. But under the constitution of the Knights of Honor the amounts which the subordinate lodges and their members are liable to pay cannot be known in advance of the assessments made by the supreme lodge. The amount and frequency of the assessments depend on the mortality of the members of the order. The subordinate lodges forward proof of death of their members to the proper officers of the supreme lodge, who ascertain from these returns the amount necessary to be assessed upon the subordinate lodges, and through them upon their members, to pay the amounts due to the holders of benefit certificates. When this amount is ascertained, it is distributed and assessed on the several subordinate lodges. The constitution of the order requires notice of these assessments to be sent to each lodge. This is the only mode by which the subordinate lodges can be informed of the amount they are required to pay, and the time within which the payment is to be made. Until this is done, no liability is imposed upon a subordinate lodge or its members. *Castner* v. *Farmers' Ins. Co.* 15 N. W. Rep. 452, (Mich. 1883;) *Bates* v. *Mutual Ben. Ass'n,* 47 Mich. 646; *Gellatly* v. *Mutual Ben. Ass'n,* 27 Minn. 215; S. C. 6 N. W. Rep. 627.

The subordinate lodges and their members discharge their constitutional obligation to the W. & O. B. fund when they pay, upon due notice, the assessments made by the Supreme lodge to maintain that

fund. An assessment notice of which is withheld from any lodge and its members is not an assessment on that lodge or its members, and their good standing is not lost by not paying an assessment of which they had no notice, through the fault or misconduct of the Supreme lodge or its officers. The Supreme lodge is bound to discharge its constitutional obligations to the subordinate lodges and their members. When, by its own wrongful act, it puts it out of the power of a subordinate lodge and its members to pay an assessment or assessments, it will not be heard to claim that the unoffending lodge and its members shall be visited with penalties and forfeitures the same as though the failure to pay the assessments had arisen from their fault. The subordinate lodge and its members, who have conformed to the laws of the order, are not to be deprived of their rights by a breach of its constitutional duty by the Supreme lodge. The Supreme lodge is under legal obligation to pay the benefit certificates of all members of the order who have conformed to its laws and died in good standing; and, if it refuses to perform its contract contained in the constitution and by-laws, the lawful holder of the benefit certificate may have recourse to the proper courts to enforce the contract. *Dolan* v. *Court Good Samaritan*, 128 Mass. 437.

Let judgment be entered for the plaintiffs for $2,000, with 6 per cent. interest from the first day of January, 1881.