STATE OF NEBRASKA, EX REL. WILLIAM J. ELLINGSWORTH, RELATOR, V. ALFRED G. CARLSON ET AL., RESPONDENTS.

FILED DECEMBER 21, 1904.   No. 13,851.

1. Injunction: JURISDICTION. An injunction order made by a court which has no jurisdiction over the matter involved, or which is in excess of the powers of the court granting it, is void.

2. Election Board: DUTIES. The duty of an election board to canvass the votes cast at the election is a political duty plainly prescribed by a positive statute, and cannot be enjoined by the courts.

3. Mandamus: DEFENSE. It is not a defense to an application for a writ of mandamus that the action which it is sought to compel has been enjoined, if it appears conclusively from the record, or from the conceded fact in the case, that the court which issued the injunction order had no power to enjoin the act in question.

4. Costs. When public officers refuse to perform a statutory duty and are compelled to do so by mandamus, the costs of the mandamus proceedings will be adjudged against them when the relator is

himself without fault, notwithstanding that the officers were act-
ing in obedience to an injunction order, supposed by them to
be valid, but which was in fact void for want of power of the
court issuing it over the subject matter.

ORIGINAL application for a writ of mandamus to compel
respondents to canvass the votes for village trustees. *Writ
allowed.*

*Thomas Darnall, E. A. Cook* and *W. D. Giffin,* for
relator.

*E. C. Calkins* and *H. V. Calkins, contra.*

SEDGWICK, J.

In April, 1904, there was held in the village of Gothen-
burg an election of members of the board of trustees of
the village. At the close of the election, and before the
votes had been canvassed, one John Strahle, alleging that
he was an elector of the village of Gothenburg, began a
proceeding in the county court of Dawson county to con-
test the election of Carroll, Weideranders and Ellings-
worth, three of the candidates at said election, each of
whom had received, it is conceded, a majority of the votes
cast at the election for the office of trustee. On the same
day that he commenced this contest in the county court,
the said Strahle began an action in the district court for
Dawson county for the purpose of enjoining the board of
trustees of the village of Gothenburg from canvassing the
votes cast at the election, and in that action he obtained
from the county judge of Dawson county a temporary
order of injunction restraining the board of trustees from
canvassing the vote. Afterwards, his contest proceedings
having been tried in the county court, and having re-
sulted against him, and having been taken to the district
court, both actions were tried in the district court, and
determined against the contestant Strahle. He has brought
both actions to this court for review. The district court,
having upon the final hearing dissolved the temporary in-
junction restraining the board from canvassing the votes,

fixed the amount of the supersedeas bond to be given by the plaintiff therein to supersede the judgment of the district court during the pendency of the action in this court, which bond was given by the plaintiff and duly approved, and the cause is now pending in this court.. Thereupon this action was brought to obtain a writ of mandamus to compel the village board to proceed and canvass the vote notwithstanding the injunction. The parties have stipulated the facts upon the record, and the question is whether the injunction was effectual to prevent the canvassing of the votes.

In *Calvert v. State,* 34 Neb. 616, the plaintiff in error had been adjudged guilty of contempt in violating an injunction order of the district court, and in reversing that judgment the court by MAXWELL, C. J., said:

"The question presented to this court is the power of a judge at chambers, upon the issues presented, there being disputed questions of fact, to make the order in question. In any case where the court or judge has jurisdiction and grants an injunction during the pendency of a suit, the injunction while in force must be obeyed. A court should exercise great care in granting such relief, and only where it is clear the injury to the plaintiff will be great or irreparable; but having granted it the adverse party should move to dissolve or modify and cannot disregard it with impunity. A court must insist that its legitimate orders be obeyed. This is necessary both for the protection of private rights and those of the public. If the court or judge exceeds his jurisdiction, however, his action in the premises is like that of any other person who acts without authority.  *  *  *  Suppose the owner of a farm, or one or more city lots, should apply for an injunction to restrain the construction of a railway across his land, and should set forth the same facts as to his ownership and possession as the defendant has done in this case, and the railway company should allege the same facts as are stated in the plaintiff's petition, would the court or judge on a preliminary hearing have authority to tie the hands

of the landowner and permit the adverse party to divest him of his rights and destroy his possession? The statement of the case carries with it a full answer. The judge, in effect, has undertaken to dispose of the merits of the case without a hearing. A temporary injunction merely prevents action until a hearing can be had. If it goes further, and divests a party of his possession or rights in the property, it is simply void. *People v. Simonson,* 10 Mich. 335; *Port Huron & G. R. Co. v. Judge,* 31 Mich. 456; *Salling v. Johnson,* 25 Mich. 489; *McCombs v. Merryhew,* 40 Mich. 72; *Arnold v. Bright,* 41 Mich. 207; *Tawas & B. C. R. Co. v. Judge,* 44 Mich. 479, 7 N. W. 65. Judge Cooley, in *Arnold v. Bright, supra,* says: 'The court of chancery has no more power than any other to condemn a man unheard, and to dispossess him of property *prima facie* his, and hand over its enjoyment to another on an *ex parte* claim to it. In several cases it has been decided that possession of lands is not to be disturbed by means of a preliminary injunction. *Hemingway v. Preston,* Walk. Ch. (Mich.) 528; *People v. Simonson,* 10 Mich. 335.' "

It is said by Mr. High in his work on Injunctions, vol. 2 (4th ed.), sec. 1425:

"While it is thus seen that courts of equity exact the most implicit obedience to the writ of injunction, and treat its wilful violation as a most flagrant contempt of court, the doctrine is to be understood with the qualification that the court has jurisdiction over the subject matter in controversy. And if the court has no jurisdiction over the matter involved, or if it has exceeded its powers by granting an injunction in a matter beyond its jurisdiction, its injunction will be treated as absolutely void, and defendants cannot, in such case, be punished for contempt for its alleged violation. For example, when an injunction is issued against a board of township officers to restrain them from holding an election which they are authorized by law to hold, equity having no jurisdiction to interfere in such case, there can be no disobedience of the injunction and no attachment for contempt, since the

mandate of the court is absolutely void. So where a court has exceeded its powers by granting an injunction in a matter over which it has no jurisdiction, as by enjoining a board of municipal officers from canvassing the returns of an election, the court having no power to hear or determine such controversies, its injunction will be treated as absolutely void, and a punishment inflicted for its violation will not be upheld."

One of the cases referred to by Mr. High in support of this doctrine is *Dickey v. Reed*, 78 Ill. 261. In that action an injunction had been granted restraining the common council of the city of Chicago from canvassing the returns made to them by the judges and clerks of election. The defendants were advised by their counsel that the injunction was void, and that they might safely disregard it. The council then proceeded to canvass the returns. They were cited for contempt by the circuit court from which the injunction had issued, and upon judgment being entered punishing them for such contempt they appealed to the supreme court. In the opinion it is said:

"Public policy does not require such a jurisdiction, even if it could sanction it. If the power were admitted, where would its jurisdiction end? Suppose a person were to conceive a law to have been unconstitutionally enacted, could he, by bill, restrain the governor and all other officers from executing it until a hearing could be had and the law declared valid? Suppose a citizen, in his hostile opposition to a governor elect, or from other motives, were to conceive that he had obtained his apparent majority by fraud, could he apply to a court for and obtain an injunction to restrain him from becoming inaugurated, until by delays and appeals, the term for which he had been elected should expire, and thus defeat the will of the people? * * * In this case there was a complainant, who had exhibited a bill, and there was a subject matter for litigation, and the controlling question is, whether the court, under any circumstances, could have power to hear, determine and decree in reference to it. If not, then the

whole proceeding was *coram non judice*. The law under which this election was held, neither in terms nor by implication confers the power. Nor is it asserted that the court had facts before it which required it to take judicial cognizance, and hear, adjudicate and decree. On the contrary, the court refused to continue the injunction, thus virtually deciding that the court was powerless to afford the relief sought, and thereby permitting the injunction to come to an end by the terms of the order awarding it, and we are clearly of opinion that it was not a case for equitable interposition. * * * In *Walton v. Develing*, 61 Ill. 201, it was held, where an injunction was issued to restrain officers from holding an election, and it was disobeyed, that they were not amenable to the process or liable to be punished for a contempt in disobeying the writ. And it was upon the grounds that the writ was void for the want of power, and the law required the officer to perform this particular duty. The distinction was there taken that, where the court has power over the subject matter, and authority to take such jurisdiction, and the court acts, its process must be obeyed; but where the power is wholly wanting, then the process is void, and need not be obeyed. The same rule was recognized and applied in *Durst v. People,* 62 Ill. 306. So the doctrine is by no means novel in this court."

In *State v. Gibbs,* 13 Fla. 55, 7 Am. Rep. 233, the court said:

"It is insisted by the relator that the proceedings by the canvassers were illegal and void, because they were enjoined by the order of a judge of the circuit court from further proceeding until the further order of the circuit judge; and that the respondents did proceed to declare the partial result of the election, of which the relator complains, before the dissolution of the injunctional order and without a further order of the judge. We think the order of the circuit judge was unadvisedly made, and that in its form and effect it was essentially a perpetual injunction. It forbade the further proceeding until permis-

sion should be granted by the judge, and was in effect the abrogation of a statute which authorized and required them to proceed with reasonable dispatch, and it was therefore illegal."

*Scott v. McGuire,* 15 Neb. 303, was an action to enjoin the county commissioners " 'from removing the county seat * * * or any of the county offices or county records or papers' from the town of La Porte to the town of Wayne." An election had been held upon the question of removing the county seat, and it appeared in the case inferentially that the result was in favor of Wayne. The opinion, after stating that the object of a contest of election is to have the declared result of the election vacated, says:

"This, however, cannot be reached by an order of injunction restraining county officers from removing their offices to the relocated county seat, and transacting business there, but by a judgment formally setting aside the result arrived at and declared by the canvassers of the votes cast at the election, in an action brought to contest it. Such an injunction would compel a violation by these officers of a positive command of the statute * * * that on the relocation of the county seat, they 'forthwith remove their respective offices, and all county records, papers, and property in their offices or charge to the place where said county seat shall have been relocated,' a severe penalty being provided in case of a refusal to do so. This is a valid enactment which the courts have no right to disregard by requiring others to disobey it."

And so the statute provides that immediately after the election the board shall canvass the votes, and that a contest may be begun after (not before) the canvass is made. The injunction in this case attempted to prevent this canvass of the votes. There can be no circumstances under our statute which will authorize the courts to so interfere and stop the election board from performing this plain statutory political duty. It follows that the injunction order made by the district co⋯ ⋯ was absolutely void

and should have been disregarded by the canvassing board. As all of the facts are agreed upon by the parties and the relator is plainly entitled to the relief asked, a peremptory writ will be ordered upon the application filed.

2. It is alleged in the answer herein that the respondents are not interested in the result of this litigation, and that they are ready to perform their duty whenever it is made plain to them by the proper authorities, and they therefore ask that no costs be taxed against them in this case. The party who obtained the injunction order is not a party to this proceeding and costs cannot therefore be adjudged against him herein. There is but very little in the record bearing upon the question of the good faith of the respondents. It is conceded in the stipulations, that is, it is alleged in the affidavit of the relator, and admitted by the respondents, that "the majority of said trustees, said A. G. Carlson, F. E. Carlson and Habbe Janssen, refuse to canvass said vote." Upon this evidence we think the costs in this case must be adjudged against these parties.

It was said by the supreme court of Illinois in *Dickey v. Reed, supra:*

"It is true that officers and others may be embarrassed as to their course of action in such cases. They must act at their peril under all such circumstances. They can, as the parties did in this case, call to their aid able counsel, learn their duty from all available sources, and then act and abide the consequences. If the advice they procure be wrong, it will be their misfortune, and the incorrect advice will not excuse the offense or mitigate the punishment."

It does not appear that these respondents took the advice of counsel with special reference to their disinterested duty in the matter. The relator herein is at least equally innocent with themselves, and the ordinary rule for taxing costs must be applied. The costs of these proceedings therefore will be taxed against the respondents A. G. Carlson, F. E. Carlson and Habbe Janssen.

WRIT ALLOWED.