Rogers v. Tangier Temple.

---

FRED C. ROGERS ET AL., APPELLANTS, V. TANGIER TEMPLE, A. A. O. N. M. S., ET AL., APPELLEES.

FILED MAY 8, 1924.    No. 23539.

1. Associations: ENFORCEMENT OF RULES: PROVINCE OF COURTS. A court of equity will not inquire into the regularity or validity of disciplinary proceedings by a voluntary unincorporated association, not organized for profit. against one of its members, when no civil or property right of such member will be affected.

2. ———: RIGHT OF MEMBERSHIP. The right of membership and those rights incident to it in such organizations do not flow from the common law, but from the organization agreement, and the power of the association over them is absolute, except where a civil or property right of the member is invaded.

3. ———: ———. A .member has no such severable right in the funds of such an association, accruing from initiation fees, dues and assessments, as will authorize a court of equity to interfere to prevent his wrongful suspension or expulsion from the association; his remedy, if any, is at law.

4. ———: RIGHTS OF MEMBERS: PROVINCE OF COURTS. Where under the agreement of association the member is entitled to receive pecuniary benefits under certain circumstances, equity will prevent deprivation thereof except by proceedings conducted in accordance with the rules of. the society, and for that purpose will inquire into such proceedings only to determine whether or not the association is acting within its jurisdiction.

APPEAL from the district court for Douglas county: JAMES M. FITZGERALD, JUDGE. *Affirmed.*

*William H. Herdman* and *Lawrence Fredericksen,* for appellants.

*Byron G. Burbank, contra.*

Heard before LETTON, ROSE, DEAN, DAY and GOOD, JJ., BLACKLEDGE and REDICK, District Judges.

REDICK, District Judge.

Action in equity to enjoin Tangier Temple from excluding plaintiffs from membership and participation in the affairs of the Temple, under an order of suspension issued by the Imperial Council claimed to be void for want of jurisdiction.

The Ancient Arabic Order of the Nobles of the Mystic Shrine is a voluntary, unincorporated association, a secret society. It is organized under the lodge system, having a supreme lodge, called the "Imperial Council," as the supreme governing body, and subordinate lodges, called "Temples," which receive their charters from the Imperial Council and are subject in every respect to the by-laws, laws and edicts of the Imperial Council, which has plenary power to suspend and erase the charter of any Temple. The Temples have power to adopt by-laws not inconsistent with the constitution and laws of the Imperial Council. Members of the order are elected by the Temple, which elects representatives to the Imperial Council. The purposes of the order are stated to be "the inculcation of charity, benevolence, tolerance and unselfish friendship." The order pays no benefits of any kind to its members, who have no severable interest in the property of the order, amounting in value to about $50,000, accumulated from entrance fees, annual dues, etc. The principal executive officer of the order and of the Imperial Council is the Imperial Potentate who is vested with power to suspend any temple or any officer of the Imperial Council or Temple until the next session of the Council, during the recess of which he has general supervision of the order and is empowered to "do all such other acts and perform all such other duties, not inconsistent with

this constitution, as, in his judgment, the interests of the order require."

Prior to November 10, 1921, complaint was made by about 75 members (called Nobles) of Tangier Temple to the Imperial Potentate concerning the conduct of some of the Nobles of the Temple, with a request that Imperial Potentate investigate; and on that date notice was sent by registered mail to the plaintiffs to attend a meeting of the Temple on November 13, 1921, to give testimony relative to certain charges filed with the Imperial Potentate, which notice was duly received by all, except Rogers, who was out of the city. On the day fixed, the Imperial Potentate attended said meeting and conducted an informal investigation of the matters complained of, calling each of the plaintiffs, except Rogers, separately before him and examining them, and examining in all about fifty Nobles. No charges were filed against the plaintiffs, and no witnesses were produced in their presence, so that the proceedings did not take the form of a trial in any sense, but were an *ex parte* investigation for the information of the Imperial Potentate. These proceedings resulted in the filing of a report by the Imperial Potentate, which was presented December 8, 1921, at the annual meeting of Tangier Temple. The report contained ten findings and an order of suspension of all of the plaintiffs until the next meeting of the Imperial Council at San Francisco in June, 1922. The report found the parties guilty of infractions of the rules of the order in two particulars: First, in the formation of a club composed of Nobles, called the Monitors Club, which was held to be illegal and in violation of section 6, article II of the code of the Imperial Council; and the second, that printed ballots had been circulated in and about Tangier Temple at the place of election by one Charles F. Hause, and various other Nobles, members of the Monitors Club, in violation of section 1, article IV of the code. It was further found that plaintiff Rogers had used vile and indecent language in referring to Illustrious Potentate Black of Tangier Temple. On these findings the order of sus-

pension was made by the Imperial Potentate, a copy of which findings and order was served upon each of the plaintiffs December 12, 1921. A complete report of these proceedings, including the evidence taken before the Imperial Potentate, was presented to the Imperial Council at its meeting in San Francisco in June, 1922, and under the rules was referred to the committee on grievances and appeals. The plaintiff Rogers appeared before the committee and was heard in his defense. The other plaintiffs made no appearance. The committee reported approving and sustaining the action of the Imperial Potentate in suspending nine members of Tangier Temple until the session of the Imperial Council, and recommended that certain Nobles be restored to full membership in Tangier Temple; that Nobles McHugh, Cole, and Hause be suspended from Tangier Temple until July 1, 1923; that Nobles Zimmerman, Bernstein, and Dobbs be suspended until July 1, 1924; and that Noble Rogers be suspended indefinitely. The report of the committee was adopted by the Imperial Council. It will be noted that the period of suspension has expired as to all plaintiffs except Zimmerman, Bernstein, Dobbs, and Rogers, who are the only plaintiffs now having an interest in the controversy. Upon trial in the district court, there was a finding and decree for the defendants, and plaintiffs appeal.

The plaintiffs present the questions for review in the following language:

"First: Is it within the power of a voluntary unincorporated fraternal association, which collects fees and dues from its members, and from the proceeds thereof has accumulated and possesses (other than ordinary lodge paraphernalia) a large amount of property and money, to suspend or expel a member thereof without (a) charges being preferred against him, (b) notice thereof to the accused, (c) opportunity afforded him to defend against same, and (d) trial; the laws of the association containing no provision so to do, but to the contrary, clearly and expressly providing otherwise; and

"Second: If such power does not exist and such sus-

pension or expulsion is void, what relief will a court of equity of this state grant to a member so suspended or expelled?"

The position of defendants is that in the absence of a civil or property right to be protected, or the infraction of a constitutional provision or state law or the public policy of the state, a court of equity will not interfere with the internal affairs of a voluntary, unincorporated organization, or inquire whether disciplinary measures taken within the order have been carried out in accordance with its rules. They further contend that the Imperial Potentate and Imperial Council acted within their powers. And it is further suggested that, inasmuch as the proceedings and orders complained of were taken and made under the authority of the Imperial Council, and not by Tangier Temple, the action should have been against the Imperial Council or its officers and members, who are not made parties.

With reference to this last point it must be conceded that it presents some serious obstacles to the granting of the relief prayed by the plaintiffs. The Temple is the creature of the Imperial Council, holding its charter at the will thereof, and its bounden obedience to a decree of this court would place it in opposition to the order of the Imperial Council, which, not being a party to this litigation, might subject the Temple to its disciplinary action. However, we have concluded to pass the point without deciding it, in view of the importance of the other questions presented to the very large membership of the order.

Regarding the second contention of defendants above noted, we do not consider a discussion thereof necessary, in view of our conclusion upon the first point, which, together with the contentions of the plaintiffs, present the single question whether the case made by the plaintiffs presents a situation within the jurisdiction of a court of equity.

It has long been established as a general principle of equity jurisprudence that jurisdiction will not be taken of controversies between individuals except to protect some civil or property right, the civil right referred to being one

which is guaranteed by Constitution, statute, or the law of the land; and the principle has many times been applied to controversies between voluntary, unincorporated associations and their members, and relief has been denied almost without exception, where the only question involved is one of discipline of its members by the society.

In *Froelich v. Musicians Mutual Benefit Ass'n,* 93 Mo. App. 383, it was said: "So long as the association remains a voluntary one the courts have no jurisdiction over it and the courts will not interpose between it and a member except for the sole purpose of protecting an interest the member may have in the property of the association."

In *State v. Georgia Medical Society,* 38 Ga. 608: "While it remained a voluntary society, the courts had no jurisdiction over it, if it violated no law of the state, and its members had no property in its membership which the law could protect."

And in *In re Sawyer,* 124 U. S. 200: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property."

See, also, *People v. Masonic Benevolent Ass'n,* 98 Ill. 635; *People v. McWeeney,* 259 Ill. 161; *Atkinson v. Doherty & Co.,* 121 Mich. 372. In *Allen v. Chicago Undertakers Ass'n,* 232 Ill. 458, it was held that equity will not enjoin the expulsion of a member from a corporation organized not for profit, and that his remedy is at law. And in *Crutcher v. Order of Railway Conductors,* 151 Mo. App. 622, it was held that, even in a case where a member was entitled to the benefit of an insurance policy and had been wrongfully expelled, equity would not interfere, and that he had a complete remedy at law upon the policy, because, if the action of the association was void, his legal rights were not affected.

Counsel for appellants has cited a number of cases which are supposed to announce a different doctrine than the one above stated, or to establish exceptions to the general rule. A few of these cases will be examined. *Jones v. State,* 28 Neb. 495, was a criminal prosecution in which the defend-

ant was charged with disturbing a religious meeting, and his guilt or innocence depended upon the solution of the question whether or not he was a member of the religious body. The church claimed that he had been expelled by resolution of the congregation, and the court held that it was necessary for the state to show an expulsion in accordance with the rules of the society, or, if there were no such rules, that "a charge must be made against him, and notice· given to him to make his defense, and opportunity presented to make the same," and that, inasmuch as no such proceedings were taken, the attempted expulsion was void. It will be observed at once that the inquiry into the validity of the expulsion was necessary to protect the civil right of the defendant to his liberty or to his property in case a fine were imposed. Moreover, the question arose collaterally, and not between the member and the society. *Hall v. Supreme Lodge, K. of H.*, 24 Fed. 450, was an action at law on a benefit certificate for $2,000, and the court found the alleged suspension void, and that the heirs were entitled to recover—another case where it was necessary to inquire into the proceedings to protect a property right. From the opinion in *O'Brien v. South Omaha Live Stock Exchange*, 101 Neb. 729, appellants quote the following:

"While the disciplinary proceedings in a voluntary association are· quasi-judicial in character, courts do not ordinarily interfere except to discover whether such proceedings have been conducted in good faith and in pursuance to rules and by-laws that are not obnoxious to public policy nor to the law of the land."

But in that case, which was an action at law to recover the value of the certificate of membership, the proceedings of the exchange were found to be regular, and a reversal of the judgment for the plaintiff was based upon the proposition that the plaintiff had no property right in the certificate. There was one concurring and one dissenting opinion, the latter being concurred in by the chief justice; the dissent being upon the ground that, assuming the validity of the expulsion, the certificate was a species of proper-

ty, the value of which could be recovered by the plaintiff upon his membership being severed. This case is no authority for the proposition that a court of equity would take jurisdiction in the absence of a property right to be protected.

The cases now to be examined appear to furnish the largest measure of support to appellants' contention. *Gardner v. East Rock Lodge*, 96 Conn. 198, was where the by-laws of the order fixed the penalties for offenses committed by members as reprimand, suspension for a definite term, expulsion, and a fine not exceeding $5, and the lodge ordered the suspension of three of the members until they paid to the lodge the sum of $144 the amount of costs and expenses of the lodge in a proceeding against such members, and it was held that the judgment of the lodge was void, and that the judgment of the lower court dismissing the appeal on the ground that plaintiffs had failed to appeal to the highest tribunals of the lodge was erroneous, for the reason that no duty to appeal from a void judgment existed. The action was to enjoin the defendant from denying plaintiff the privileges of a member of the society, compelling his restoration to membership, and for $1,000 damages. At page 206 it is said:

"In the present case, which is not a case where the charges involve property rights, but relates to discipline and damages as the incidental result of the unlawful infliction of discipline, the mass of decisions directly involving property rights are of little weight."

But it appears that among the privileges of membership of which plaintiff was deprived by the suspension was the "receipt of sick benefits, and the like." While the case makes for the appellant in its announcement of general principles and its result in remanding the case for further proceeding, still it does appear that by the act of suspension the plaintiff was deprived of sick benefits to which he was entitled as a member, and this surely was a property right within the jurisdiction of a court of equity to protect. *Burke v. Monumental Division, No. 52, B. of L. E.*, 273 Fed. 707,

was another case in which an expulsion without notice of the charge was held void, but in which an injunction was held proper because the membership carried with it the right to certain pecuniary benefits which would be lost by the expulsion, and upon the ground that the remedy at law to recover such benefits was inadequate. That case further held that mandamus to restore his membership would have been proper in the case of an incorporated association, but that, defendant being unincorporated, equity would grant the relief. In *Langnecker v. Trustees of Grand Lodge, A. O. U. W.*, 111 Wis. 279, the effect of the expulsion was to deprive the member of insurance. *Malmsted v. Minneapolis Aerie, F. O. of E.*, 111 Minn. 119, was an action at law to recover damages for wrongful expulsion. *Anderson v. Amidon*, 114 Minn. 202, was an action at law by a commercial club to recover delinquent dues. These cases do not aid the plaintiffs.

Plaintiffs, however, cite two cases from Texas which support their contention. In *Willis v. Davis*, 233 S. W. (Tex. Civ. App.) 1035, it is held:

"Where a member of a voluntary association has been convicted of an offense and expelled in violation of the rules and by-laws of the association, and where no by-laws or other laws of the association make any adequate allowance for relief by appeal from such conviction and expulsion, such member may resort to equity for relief."

And at page 1037, Lane, J., uses the following language: "It is well settled that the courts will not interfere with the decisions of any kind of voluntary association in disciplining, suspending or expelling its members where no property rights are involved, except to ascertain whether or not the proceeding was pursuant to the rules and laws of such an association, whether or not it was in good faith, and whether or not there was in it anything in violation of the law of the land. *Brown v. Harris County Medical Society*, 194 S. W. (Tex. Civ. App.) 1179, and authorities there cited."

The case contains no discussion of the question, nor other

citation of authorities.  The opinion in the *Brown* case was
written by the same Justice Lane, in which he says (p.
1181):

"We have found no authority for holding that, where a
member of a voluntary association has been convicted of an
offense and expelled in violation of the rules and by-laws of
the association, and where the by-laws and other laws of
the association do not allow adequate relief by appeal from
such conviction and expulsion, such member may not re-
sort to a court of equity for relief.  We think the uniform
holding of all courts is to the contrary.  In 26 Cyc. 345,
the rule of law is thus stated: 'As a rule the writ will not
be granted until the relator has exhausted the means of re-
lief and remedies by objection, defense, appeal,  *   *   *
afforded him by the by-laws and rules of the corporation,
unless such remedies are inapplicable or unreasonable and
inadequate, or would prove vain and useless.' "

The citation from Cyc. is found under the topic "Manda-
mus," and of the 13 cases cited in support of the proposi-
tion we have examined 11 and found one only in which a
voluntary, unincorporated association was involved; the
other 9 being cases where the writ was directed to corpo-
rations, and in a majority of them a direct property inter-
est was involved.  While the statement of the law in Cyc.
as applied to the remedy of mandamus is fully supported by
the authorities cited, we fail to perceive their application to
either the *Willis* or the *Brown* cases, and, therefore, we
do not feel that we should follow them.

The general proposition that equity interferes with this
class of cases only to protect civil or property rights finds
support in a number of cases in this jurisdiction, but it
would extend this opinion to too great length to enter into
a discussion of them.  For the information of the student
we refer to *Pounder v. Ashe,* 44 Neb. 672; *Bonacum v. Mur-
phy,* 71 Neb. 463, 487; *Bonacum v. Harrington,* 65 Neb.
831; *Powers v. Budy,* 45 Neb. 208.

It is finally contended that the case at bar involves the
property right of the plaintiffs in the funds and property

176          NEBRASKA REPORTS.          [VOL. 112

State, ex rel. Spillman, v. Chicago & N. W. R. Co.

of the temple, and two cases are cited: *Grand Grove v. Garibaldi Grove,* 130 Cal. 116, and *Spiritual and Philosophical Temple v. Vincent,* 127 Wis. 93. In the first case the supreme body had attempted to forfeit the charter of the temple, and brought an action at law to recover funds belonging to the temple in the hands of its treasurer. There was no question but that the fund belonged to the temple, and the court having found the forfeiture of the charter invalid under the rules of the order sustained a demurrer to the petition. In the second case the contest was between two factions of the society as to the custody of the common fund. Neither of these cases involved any individual claim by a member of the organization to the fund or any part thereof, but concerned only the ownership of the fund as a whole, the dispute being as to which organization had title. The cases do not support plaintiffs' contention, and, on the other hand, it seems to be well established that, in organizations of the kind under consideration, members have no severable interest or right of property in the common fund. *Franklin v. Burnham,* 40 Misc. (N. Y.) 566; *Lawson v. Hewell,* 118 Cal. 613; *Local Union v. Barrett,* 19 R. I. 663.

We find no error in the record, and the judgment of the district court is

AFFIRMED.

Note—See Associations, 5 C. J. p. 1364, sec. 101; p. 1352, sec. 63; p. 1357, sec. 78.