CHARLES M. LEEMAN, MAYOR AND MEMBER OF THE CITY
COUNCIL OF THE CITY OF OMAHA, PLAINTIFF IN ERROR, V.
JAMES VOCELKA, DEFENDANT IN ERROR.

32 N. W. 2d 274

Filed May 7, 1948.    No. 32332.

*Edward F. Fogarty, Edward Sklenicka, Einar Viren,
James M. Paxson,* and *Herbert M. Fitle,* for plaintiff in
error.

*Eugene D. O'Sullivan, B. J. Boyle,* and *White & Lipp,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and WESTERMARK, District Judge.

CHAPPELL, J.

Plaintiff in error, hereinafter called defendant, was found guilty of contempt by the district court for Douglas County, and "not as punishment, but as a token and demonstration that all people are amenable to the orders of the Court" defendant was sentenced to pay a fine of one dollar and costs, and to be confined momentarily in the custody of the sheriff and then be released, but upon failure to pay the fine and costs, he was ordered committed in lieu thereof. At the conclusion of the hearing, the trial court also castigated and reprimanded Edward F. Fogarty, the city attorney, for alleged misconduct in advising defendant as hereinafter set forth. Stay of execution was granted defendant; however, and his motion for new trial was overruled, whereupon he prosecuted error to this court. We exonerate the city attorney and reverse and dismiss the proceedings.

On March 3 or 4, 1947, defendant in error, hereinafter called plaintiff, filed with the city clerk of Omaha an application, together with a certified check and bond, as required by law, to obtain renewal of a Class "C" or retail liquor license for the year May 1, 1947, to April 30, 1948. The application showed on its face that in August 1946, plaintiff had been cited before the Nebraska Liquor Control Commission and that his license had been suspended for sale of liquor on Sunday.

On April 1, 1947, the city council by resolution voted to renew some 195 Class "C" licenses to named applicants therefor, who, as represented, had no violations charged against them. By oversight of the clerk, plaintiff's application was among that group, and his suspen-

sion was overlooked and not called to the city council's attention until after his application for a license had been improvidently approved and signed by defendant as mayor, countersigned by the chairman of the Liquor Control Commission "as a matter of course" as provided by section 53-132, R. S. 1943, and delivered to plaintiff. However, the license was, as prescribed on its face as well as under the law, not effective or to be effective as such until on and after May 1, 1947, and it was at all times as provided therein subject to the provisions of the Liquor Control Act and such rules and regulations as may have been or might thereafter be lawfully promulgated or adopted.

On April 23, 1947, after plaintiff's suspension had been called to its attention, the council, by motion, unanimously reconsidered its action approving the renewal of plaintiff's license, and set the matter down for hearing on April 29, 1947. Thereupon, plaintiff was duly notified personally and by mail of such action and proposed hearing. He was also personally requested by the clerk to surrender the license then in his possession, but as yet ineffective, which he refused to do.

On the morning of April 29, 1947, plaintiff filed an original action in the district court, seeking substantially among other things to enjoin the members of the city council as such from reconsidering or undertaking any action or holding any hearing, meeting, or proceeding initiated or designed to render ineffectual plaintiff's alleged license. The basis of plaintiff's action was that the council had no authority in law to take such action.

Ex parte, without any notice or hearing, the trial court granted a supersedable temporary injunction as distinguished from a temporary restraining order, among other things thereby enjoining defendants as members of the city council from reconsidering and from holding, carrying on, or conducting any proceeding, hearing, or meeting to withdraw or otherwise attempt to cancel, rescind, or nullify plaintiff's license.

Although the sheriff was present in the council chamber on the morning of April 29, 1947, and had ample time and opportunity earlier to have served the process and order of injunction upon defendants, he made no effort to do so until the members of the council were in the midst of a regular session, and were holding a hearing upon the application of another for a liquor license. At that time, upon the advice of the city attorney that an injunction enjoining the city council from having a hearing in a matter involving a liquor license was void, and that the council was immune from service thereof while in regular session, defendant refused to give the sheriff permission to make service thereof as requested, and ordered him barred from the council chamber while in regular session. Thereafter, while the council was still in regular session, plaintiff's application was called up for hearing. Although plaintiff was present in the council chamber at that time, he made no response, and the council, after hearing, unanimously adopted a resolution denying him any license. Following adjournment of the council meeting, the process and order of injunction were duly served upon defendant members of the city council.

On April 30, 1947, an application, supported by affidavits, was filed by plaintiff in the original injunction suit, charging defendant and the other members of the city council with contempt of court. Whereupon the trial court issued an order to show cause. The defendants jointly and severally answered, denying generally and, insofar as important here, contending that they were immune from service at the time it was attempted and that the temporary injunction was void. Upon trial of the issues, defendant herein, the mayor, was found guilty, but all other defendants were dismissed or acquitted.

The charge of contempt is in two parts, and will be so treated in this opinion. The first charged in substance that defendants and each of them, with full knowledge

of the import, contents, and restraints of the temporary injunction, willfully, deliberately, and contumaciously, and in wanton disregard of law, prevented delivery to the defendants of the process and order of injunction, and did hinder, delay, and unlawfully interfere with service thereof, and thereby did unlawfully and illegally attempt to and did obstruct the due administration of justice, all in contempt of court and its order and process.

The second charged that defendants and each of them, with full knowledge of the import, contents, and restraints of the temporary injunction, willfully, deliberately, and contumaciously disobeyed, flaunted, and violated the same, by reconsidering and having a hearing, withdrawing its approval and denying plaintiff's application for renewal of his license. It prayed that defendants be cited for contempt and punished; that they be directed to rescind their reconsideration and denial of plaintiff's license; and that they be required to give further security to obey the injunction.

It was said by this court in Maryott v. State, 124 Neb. 274, 246 N. W. 343: "Generally speaking, contempts are either direct, those committed in the presence of the court while in session, or constructive, consisting of those not committed in the presence of the court. Properly speaking, constructive contempts should be divided into two classes - criminal and civil. Those contempts which are prosecuted to preserve the power and vindicate the dignity of the court and to punish for disobedience of its orders are, ordinarily, termed criminal contempts, while those instituted to preserve and enforce the rights of private parties to the suit and to compel obedience to orders and decrees made to enforce the rights and to administer the remedies to which the court has found them to be entitled are, ordinarily, civil contempts. * * * In criminal contempts the prosecution should be in the name of the state and by information." See, also, 17 C. J. S., Contempt, § 63, p. 79; 13 C. J., Contempt, § 82, p. 59.

Section 25-2121, R. S. 1943, provides: "Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of * * * (3) willful disobedience of or resistance willfully offered to any lawful process or order of said court; (4) any willful attempt to obstruct the proceedings, or hinder the due administration of justice in any suit, proceedings, or process pending before the courts; * * *."

Without question the first part of the charge came clearly within the classification of a constructive criminal contempt, which could only be prosecuted in the name of the State and by information. Private litigants in such a situation have no right or authority to prosecute such actions, and thus intimidate and harass litigants and public officials under the pretext of preserving the power and vindicating the dignity of the court. We are not unmindful that the power of courts should be preserved and that the dignity of courts should be vindicated for the benefit of the public, but competent public officials and adequate proceedings are otherwise available for that purpose, which will also protect and preserve the fundamental rights and liberties of litigants which courts were created to protect. Viewed in that light, the first part of the charge of contempt falls of its own weight for want of any power or authority to prosecute the same.

On the other hand, the second part of the charge, while of a dual nature, may be said to come within the classification of constructive civil contempt, in which case it need not be prosecuted in the name of the State and by information in a separate action, but may be prosecuted in the original action by the affidavit of a party to the action who is injuriously affected. In re Application of Niklaus, Niklaus v. Holloway, 144 Neb. 503, 13 N. W. 2d 655; Maryott v. State, *supra*.

It will be noted from the facts heretofore stated that plaintiff's application had already been reconsidered by

the city council on April 23, 1947, before the temporary injunction was granted, and that there was then naught left for determination save the question of whether or not plaintiff's application, after hearing thereon, should be approved or denied.

The remedy by injunction is wholly preventative, prohibitory, or protective, and it will not issue to afford a remedy for what is past but only to prevent future mischief. Rights, if any, already lost, and wrongs, if such, already perpetrated, cannot be restrained or remedied by injunction. Conrad v. Kaup, 137 Neb. 900, 291 N. W. 687.

We have presented then only the question whether or not the trial court had any authority or jurisdiction to enjoin the hearing, upon plaintiff's application. We hold that it did not.

The comprehensive Liquor Control Act of this state, as applicable here, is chapter 53, R. S. 1943. As provided in section 53-149: "A license shall be purely a personal privilege, * * * and shall not constitute property, * * *." Section 53-150 provides: "Any licensee may renew his license at the expiration thereof; Provided, he is then qualified to receive a license * * *; and provided, further, that the renewal privilege herein provided for shall not be construed as a vested right * * *."

In Griffin v. Gass, 133 Neb. 56, 274 N. W. 193, this court approved the statement that: " 'The right to engage in the sale of intoxicating liquors is not one of the privileges or immunities of citizens of the United States which the states are thereby forbidden to abridge, nor can such restrictive statutes be said to deprive persons of liberty or property without due process of law, nor, if not entirely arbitrary in their discrimination between persons, do they deprive any one of the equal protection of the laws.' 33 C. J. 508.

"So, also, 'A license for the sale of liquor is not a contract between the state or municipality granting it and the person to whom it is issued, in any such sense

as to be within the protection of constitutional guaranties. It gives no vested rights, such as cannot be abridged or abrogated by the legislative authority in the interests of the public, nor is it in itself property or a right of property, in the ordinary meaning of those terms.' 33 C. J. 532."

It is well established as a general principle of equity jurisprudence that an equity court has no jurisdiction in any controversy except to protect some property right or some civil right granted by the Constitution, statutes, or law of the land. See Rogers v. Tangier Temple, 112 Neb. 166, 198 N. W. 873; 21 C. J., Equity, § 135, p. 154; 28 Am. Jur., Injunctions, § 162, p. 352.

As stated in Sheridan v. Colvin, 78 Ill. 237, and approved in In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. Ed. 402, cited and relied upon in Wolski v. Lippincott, 147 Neb. 944, 25 N. W. 2d 754: "It is elementary law, that the subject matter of the jurisdiction of a court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property. Nor do matters of a political character come within the jurisdiction of the court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of government, except under special circumstances, and where necessary for the protection of rights of property." See, also, 30 C. J. S., Equity, § 66, p. 413; 21 C. J., Equity, § 137, p. 156.

As heretofore demonstrated, no property right, and as will be hereinafter observed, no civil right cognizable by courts, was involved in plaintiff's injunction suit.

We turn again to chapter 53, R. S. 1943. An examination of its various sections, which, as required therein, must be liberally construed, demonstrates that they

provide a complete, comprehensive, and adequate authority and procedure for the hearing and disposition of every phase relating to the granting, renewing, or revoking of liquor licenses without any recourse to courts. They place the express power and authority with relation thereto entirely in the hands of the Nebraska Liquor Control Commission and local governing bodies for the protection of the health, safety, and welfare of the people of this state. Both of such bodies, when acting upon matters such as here involved, exercise a discretion and function in a quasi-judicial capacity. Any final order or action of the local governing body is appealable to the commission with trial de novo and rehearing thereof, but no appeal is allowed from any decision of the commission to the courts.

It is elementary that equity follows the law, and has no jurisdiction or authority to violate it or enjoin its valid proceedings or processes. This case is a classic example of the reason for the rule, since it appears that as a result of the trial court's action, plaintiff was extrajudicially permitted to sell intoxicating liquors at retail without the required approval of the city council and in violation of the Liquor Control Act.

In The Law of Injunctions, Lewis & Spelling, § 5, p. 7, it is said: "A court of equity cannot, however, exercise jurisdiction of a matter which has been by statute expressly entrusted to another tribunal of adequate power to deal with it." See, also, Massman Construction Co. v. Nebraska Workmen's Compensation Court, 141 Neb. 270, 3 N. W. 2d 639.

Also, as stated in MacLaury v. Hart, 121 N. Y. 636, 24 N. E. 1013: "There is no reason, therefore, why the statute remedy should not be pursued, and a court of equity is never at liberty to draw to its general jurisdiction a question remitted to a competent and sufficient authority by express command of a statute, unless under some very exceptional circumstances, which do not exist

here." See, also, State ex rel. Ellingsworth v. Carlson, 72 Neb. 837, 101 N. W. 1004.

In 43 Am. Jur., Public Officers, § 255, p. 72, it is said: "Where a statute gives a discretionary power to an officer to be exercised by him upon his own opinion of certain facts, he is the sole and exclusive judge of the existence of those facts; the courts will not attempt to interfere with or control the exercise of his discretionary powers, in the absence of any controlling provisions in the law conferring the power. The fact that the exercise of a power may be abused is not a sufficient reason for denying its existence. Thus, it is a firmly established rule, as stated in other articles in this work, that the judiciary will not interfere with executive officers in the performance of duties which are discretionary in their nature or involve the exercise of judgment. Although courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of the acts of public officers, after the matter has once passed beyond their control there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law reposes this discretion in him for that occasion, and not in the courts." See, also, Chicago, R. I. & P. Ry. Co. v. City of Lincoln, 85 Neb. 733, 124 N. W. 142; Lee v. City of McCook, 82 Neb. 26, 116 N. W. 955.

In the light of the foregoing and by an analogy we hold that the acts of local governing bodies of cities and villages in passing upon original applications for, or the renewal or revocation of licenses to sell alcoholic liquors at retail, being quasi-judicial in character, and by statute expressly entrusted to that tribunal, are not subject to collateral attack or reviewable by resort to an injunction suit. See Everts v. Young, 125 Neb. 562, 251 N. W. 109; Dawson County Irrigation Co. v. McMullen, 120 Neb. 245, 231 N. W. 840.

We are cognizant of the fact that an equity court has the power generally to issue a temporary restraining order to preserve existing conditions while it is determining its own authority to grant injunctive relief in cases where the question of jurisdiction has any substantial foundation in law or fact, and in that situation such restraining orders must be obeyed, but the rule is otherwise where the question of jurisdiction is clearly frivolous and not substantial in any sense, as in the case at bar. See United States v. United Mine Workers of America, 330 U. S. 258, 67 S. Ct. 677, 91 L. Ed. 884.

In State ex rel. Ellingsworth v. Carlson, *supra,* this court approved a statement appearing in High on Injunctions, volume II, (4th ed.), § 1425, p. 1434, to the effect that: "And if the court has no jurisdiction over the matter involved, or if it has exceeded its powers by granting an injunction in a matter beyond its jurisdiction, its injunction will be treated as absolutely void, and defendants can not, in such case, be punished for contempt for its alleged violation." See, also, Wolski v. Lippincott, *supra.* The second part of the charge against defendant comes squarely within that category, and thus disposes of it, as well as the unwarranted castigation and reprimand of the city attorney by the trial court.

As we view the case, other questions presented in the briefs need not be discussed, and for the reasons heretofore stated, the judgment is reversed and the contempt proceeding is dismissed.

REVERSED AND DISMISSED.