PROPERTIES INVESTMENT GROUP OF MID-AMERICA, A NEBRASKA PARTNERSHIP, APPELLEE, V. JBA, INC., A CORPORATION, APPELLANT.

495 N.W.2d 624

Filed February 19, 1993.   No. S-90-069.

Thomas J. Culhane and David A. Hecker, of Erickson & Sederstrom, P.C., for appellant.

Thomas M. White, of Fitzgerald, Schorr, Barmettler & Brennan for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and HOWARD, D.J., Retired.

FAHRNBRUCH, J.

In this appeal, a lessee that breached a long-term commercial warehouse lease claims that the district court for Douglas County erred when it entered a $141,308.87 partial summary judgment in favor of the lessor.

The lessee, JBA, Inc., a corporation, primarily complains that a genuine issue of material fact existed as to whether the lessor, Properties Investment Group of Mid-America (PIGOMA), a Nebraska partnership, had taken reasonable steps to mitigate its damages following JBA, Inc.'s breach of the lease. Inherent in the entry of the partial summary judgment in favor of PIGOMA is a finding by the district court that the lessor had taken reasonable steps to mitigate its damages and that no genuine issue of material fact existed in that regard. JBA, Inc., appeals the summary judgment order to this court, claiming that the trial court erred in (1) granting PIGOMA's motion for partial summary judgment, since there was a genuine issue of material fact as to whether PIGOMA had made reasonable efforts to mitigate its damages, and (2) computing PIGOMA's damages by including attorney fees and accounting fees not supported by competent evidence. (In this court, PIGOMA has agreed that the trial court should not have included $800 in accounting fees in the damage award.)

Except for the award of the accounting fees, we affirm the partial summary judgment of the district court.

## PRIOR HISTORY AND PROCEEDINGS

The record reflects that in Omaha, PIGOMA owned the commercial warehouse with attached office space which is involved in this appeal. On January 1, 1984, PIGOMA leased the warehouse to a corporation known at the time as JBA, Inc. (Old JBA), for a term of 15 years. In April 1984, with the consent of PIGOMA, Old JBA assigned its interest in the lease to EFT, Inc., which assumed the rights and responsibilities of Old JBA under the lease. EFT, Inc., began occupying the warehouse property April 3, 1984, and subsequently changed its name of EFT, Inc., to JBA, Inc. On October 27, 1987, JBA, Inc., gave notice to PIGOMA that it had decided to cease all of its operations and that JBA, Inc., intended to abandon the

warehouse property at the end of the month, and it attempted to surrender the leasehold premises to PIGOMA. JBA, Inc., also advised PIGOMA that it intended to have JBA, Inc.'s name removed from all utility services to the warehouse property. PIGOMA refused to accept the abandonment, rejected any surrender of the leasehold, and gave JBA, Inc., notice that it intended to relet the premises to a new tenant and hold JBA, Inc., liable for resulting deficiencies in rents and losses arising from utilities, taxes, insurance, and each and every other obligation assumed by JBA, Inc., under the lease. JBA, Inc., stopped paying rent as of November 1987.

On January 7, 1988, PIGOMA filed a petition in the trial court in which it alleged that JBA, Inc., had breached the lease with PIGOMA. The district court was requested by PIGOMA to enter a declaratory judgment finding JBA, Inc., liable under the lease for unpaid rent, interest, taxes, and utilities; breach of the lease's occupancy covenant; and other expenses and obligations JBA, Inc., had assumed under the lease as they might accrue. PIGOMA also requested that the trial court retain jurisdiction of the case following entry of judgment to ascertain and enter as a judgment the amount of PIGOMA's continuing damages. Such procedure is permissible under Neb. Rev. Stat. § 25-21,156 (Reissue 1989) and *First Nat. Bank v. Omaha Nat. Bank*, 191 Neb. 249, 214 N.W.2d 483 (1974). See, also, *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 451 N.W.2d 259 (1990).

Following a hearing, the district court on August 25, 1988, entered a declaratory judgment finding that JBA, Inc., was in breach of its lease with PIGOMA. The court retained jurisdiction over the matter to ascertain and award damages and such other relief as it deemed proper.

On December 20, 1988, the court entered an order awarding damages which it found had accrued through September 30, 1988, as a result of JBA, Inc.'s breach of the lease. The court again retained jurisdiction to enter future awards for damages which might accrue as a result JBA, Inc.'s continued breach of the lease. Neither the record nor the files of this court indicate that an appeal was taken from either of these two orders, each of which affected the substantial rights of each of the parties.

As a result, each of the two orders has become final. An order is final and appealable when the substantial rights of the parties to the action are determined, even though the cause is retained for the determination of matters incidental thereto. *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992).

### PRESENT PROCEEDINGS

We now begin a review of the proceedings which resulted in the $141,308.87 partial summary judgment in favor of PIGOMA for damages for the period of September 30, 1988, to September 30, 1989, which order is the subject of the present appeal.

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Holden v. Schwer, ante* p. 389, 495 N.W.2d 269 (1993).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Holden v. Schwer, supra.*

### FACTS OF THIS APPEAL

It was on November 14, 1989, that PIGOMA filed a motion for a partial summary judgment seeking damages which it alleged had accrued between September 30, 1988, and September 30, 1989. At the hearing on the motion, PIGOMA introduced into evidence the affidavits of Craig Hergott and Bruce Bisson, both partners in PIGOMA, and the deposition of Stephen Farrell.

Hergott's affidavit contained documentation of amounts claimed by PIGOMA as damages in the form of unpaid rent, miscellaneous expenses, professional fees, utilities, and taxes which PIGOMA claimed were due under the lease. Hergott stated in his affidavit that JBA, Inc., had not paid rental payments due under the lease from October 1988 through September 30, 1989. The affidavit also stated that from September 1988 through November 9, 1989, the date of the

signing of the affidavit, PIGOMA had continually listed the warehouse property with a licensed realtor.

In his affidavit, Bisson stated in substance as follows: In November 1987, PIGOMA began interviewing realtors to list the property for sale or lease. The property was listed with Progress West, a realty company, on December 4, 1987. This formal listing expired on June 4, 1988. However, Progress West continued to represent PIGOMA in regard to the warehouse property under a verbal agreement from June 4 through October 1988. Under the verbal agreement between PIGOMA and Progress West, the latter continued to advertise and show the property to prospective tenants or purchasers. In October 1988, PIGOMA retained John Dickerson, a certified property manager, to assist in PIGOMA's effort to sell or lease its warehouse property. On March 9, 1989, Dickerson retained Investors Realty to act as listing agent for the property. Bisson stated additionally that during the interim of December 1988 to March 9, 1989, Dickerson negotiated with realtors over the terms of a listing agreement and that PIGOMA itself negotiated with a prospective purchaser, the Opus III and VII corporation (Opus), in January and February 1989 for the sale of the property. Bisson also stated that PIGOMA and Opus reached a verbal agreement concerning the sale of the warehouse property to Opus. He further stated that documents were drafted to consummate the sale from PIGOMA to Opus, but that Opus ultimately refused to consummate the sale because of its own financial concerns. That PIGOMA had expectations of selling the warehouse property to Opus is corroborated by exhibits received in evidence which show that during January and February 1989, legal counsel prepared documents to consummate the sale of the warehouse property to Opus.

Through the introduction of the foregoing evidence, PIGOMA met its burden to show that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law if the evidence presented for summary judgment remained uncontroverted. See *Holden v. Schwer, supra.*

In opposition to PIGOMA's motion for summary judgment, JBA, Inc., introduced into evidence the deposition of Dickerson and the affidavit of Gregory L. Hornish, a vice

president of Business Properties, Inc., a real estate management and brokerage company.

In his deposition, Dickerson testified that although the formal listing of the warehouse property had expired some time in the spring or summer of 1988, Progress West was still allowed to continue as the representative of the property. That arrangement, according to Dickerson, continued until he took over in December 1988. During the arrangement, Progress West still had keys to the property, was still advertising and showing the warehouse property, and had a sign on the building. Progress West's arrangement continued "apparently until just shortly before I took over the property," which was in December 1988. Dickerson testified that he was contacted by PIGOMA in October or November 1988 and that he signed a consulting and management agreement with PIGOMA on December 2. Dickerson testified that between December 2, 1988, and March 9, 1989, the property was not technically listed for sale or lease with a realtor. He testified that during the 3-month period, "[I]n actual handling of the property, I took any calls or inquiries about the property, worked with Progress West on any prospects that they were kind of carrying from their . . . term, and trying to make a somewhat of a smooth transition between Progress West and Investors Realty." Dickerson testified that during the 3-month period, he was also taking proposals for listing the warehouse property. He testified that he held off listing the property during the 3-month period because there was "such good activity going on the property." Dickerson testified that between December 2, 1988, and March 9, 1989, he followed up on some prospects that Progress West had dealt with, but had not brought to a conclusion. Those prospects included a U.S. Army Reserve unit and Dudley moving company. When it was discovered that Dickerson was handling the PIGOMA warehouse property, Lee Rising, of the Roger Haney Corporation, who wanted to list the property, showed the property to some of his prospects. According to Dickerson, Progress West, as well as Investors Realty, also showed the property. Dickerson testified that he made some "cold calls" on some companies that were interested in industrial property. "So I basically followed up on anything

that was in the wind or was unresolved," Dickerson testified.

In his affidavit, Hornish stated that in his professional opinion, it is necessary to list commercial property such as PIGOMA's warehouse with a recognized real estate broker or brokerage firm to have any reasonable prospect of finding a tenant or purchaser for such property. He stated that if such property, having been once listed with a broker, is left unlisted for any significant period of time, there will be an adverse impact upon the prospects for sale or lease of the property. He said that a period of 3 months is a significant period of time for a commercial property to be unlisted.

PIGOMA also introduced the deposition of Stephen Farrell, who testified that a listing agreement was signed on March 9, 1989, between PIGOMA and his company, Investors Realty. He said that although PIGOMA gave him no authority to vary from the sale or lease price it had set, PIGOMA had let him know that it would entertain all reasonable offers. Farrell said that he had made every reasonable effort to sell or lease the property.

JBA, Inc.'s first assignment of error, that a material issue of fact existed as to whether PIGOMA had met its duty to mitigate its damages flowing from JBA, Inc.'s breach of the lease agreement, basically stems from PIGOMA's failure to list the property with a licensed real estate agent or broker from December 2, 1988, to March 9, 1989.

In support of its first assignment of error, JBA, Inc., argues that the affidavit of Hornish created a genuine issue of material fact as to whether PIGOMA had made reasonable efforts to mitigate its damages. In *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 451 N.W.2d 259 (1990), citing *Smith v. Erftmier*, 210 Neb. 486, 315 N.W.2d 445 (1982), we held that a landlord has a duty to relet the premises in order to mitigate damages when the tenant abandons the premises prior to the expiration of the lease and that the duty to mitigate requires the landlord to take all reasonable steps to reduce his damages. In *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. at 346, 451 N.W.2d at 262, we also held that "[i]n the landlord's action to recover rent upon the tenant's abandonment of the leased premises, the tenant has the burden to show that the landlord 'unreasonably failed to relet the

premises and mitigate damages.' "

Hornish's affidavit falls far short of even claiming that PIGOMA, through the exercise of reasonable diligence, could or would have sold the warehouse property or could or would have secured a suitable tenant to fill the vacancy created by JBA, Inc.'s breach of its lease. See *Bernstein v. Seglin*, 184 Neb. 673, 171 N.W.2d 247 (1969). At most, Hornish suggests that failure to list commercial property with a broker for 3 months has an adverse impact upon the prospects of a sale or lease of the property. Nowhere in his affidavit does Hornish claim that the steps PIGOMA took to mitigate its damages were unreasonable or that it " 'unreasonably failed to relet the premises' " or " 'mitigate damages.' " In this case, PIGOMA's property had been listed formally and informally with a realtor for nearly a year. The record is devoid of any indication of a genuine prospect for a lease or sale of the property during that time. The evidence is uncontroverted that between December 4, 1987, and June 5, 1988, there was a formal listing of PIGOMA's warehouse property with a realtor and that the realtor continued to represent PIGOMA in regard to its warehouse property until at least December 1988. At that time, PIGOMA employed a certified property manager in an effort to have the property sold or leased. From December 1988 to March 9, 1989, the property manager negotiated with realtors over the terms of a listing agreement, took calls or inquiries about the property, took proposals for listing the warehouse property, and followed up on possible buyers and lessees. On at least three occasions during the 3-month period when the property was not listed, realtors showed the property. The property manager also made some "cold calls" on companies that were interested in industrial property. In addition, the owners of PIGOMA negotiated a sale of the property. Without fault on the part of PIGOMA, the sale was never completed because of the buyer's concern for its finances.

"The duty to mitigate requires the landlord to take all reasonable steps to reduce his damages." *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 346, 451 N.W.2d 259, 262 (1990). PIGOMA's evidence shows that all of the steps it took to sell or lease the property were reasonable. JBA, Inc.'s evidence is

insufficient to create a genuine issue of material fact as to whether PIGOMA had taken all reasonable steps to mitigate its damages. JBA, Inc.'s first assignment of error is without merit.

The court entered judgment in favor of PIGOMA in the amount of $141,308.87, which represented "damages for rent, maintenance and utility bills, along with the expenses for professional services utilized in an effort to find a tenant and/or purchaser for the building following JBA's breach of the lease." The court again retained jurisdiction to ascertain and enter judgment for any damages accruing after September 30, 1989.

In its second assignment of error, JBA, Inc., argues that PIGOMA was not entitled to recover the professional fees awarded in the judgment. JBA, Inc., claims that "there was no evidence from which the court could conclude without resort to speculation and conjecture that the attorney and accounting fees . . . were caused by the breach, or, for that matter, even incurred by [PIGOMA]." Brief for appellant at 17. PIGOMA concedes in its brief that it is not entitled to the accounting fees. Therefore, in regard to professional fees, only at issue are the attorney fees of $1,520. Copies of two bills from PIGOMA's attorneys to PIGOMA were entered into evidence. The descriptions of services on the billings include the following: "[C]onferring . . . re possible sale of building," "conferring . . . re terms of purchase by Opus," and "conferring . . . re lack of action by Opus." The services were provided between January 19 and February 21, 1989. The services which are detailed in the bills for attorney fees are clearly connected to the attempted sale of the property by PIGOMA to Opus.

"In a contract case the proper measure of damages is an amount which will compensate the injured person for loss which fulfillment of the contract would have prevented or breach of it has entailed." *Wells Fargo Alarm Serv. v. Nox-Crete Chem.*, 229 Neb. 43, 46, 424 N.W.2d 885, 888 (1988). "[G]enerally speaking the losses sustained by reason of the breach or the gains prevented are both actual and consequential damages." *Id.* at 47, 424 N.W.2d at 889. In this case, PIGOMA is not attempting to recover attorney fees in its suit against JBA, Inc. Rather, it is attempting to recover

attorney fees as damages resulting from expenses incurred in attempting to mitigate its damages from JBA, Inc.'s breach of the lease. The district court was correct in allowing attorney fees as damages resulting from breach of the lease.

The decision of the district court is affirmed except as to the amount awarded to PIGOMA for accounting fees. The cause is remanded to the district court with direction to enter judgment consistent with this opinion.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTION.

WHITE, J., not participating.