ROBERT TODD ROSEBERRY, D.V.M., APPELLANT, V. GREGG F. WRIGHT, M.D., M.ED., DIRECTOR OF THE DEPARTMENT OF HEALTH, STATE OF NEBRASKA, APPELLEE.

508 N.W.2d 867

Filed November 23, 1993.    No. A-92-089.

James R. Mowbray, of Mowbray & Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Melanie J. Whittamore-Mantzios for appellee.

Sievers, Chief Judge, and Connolly and Irwin, Judges.

Connolly, Judge.

This appeal arises from the failure of the appellant, Robert Todd Roseberry, to secure a permanent injunction enjoining the Nebraska Department of Health (Department) from refusing to issue to Roseberry a license to practice veterinary medicine. Roseberry's application for a permanent license was complete, and he had passed the veterinary examination, but the Department decided to delay issuance of a license to Roseberry pending an investigation of an allegation that he had practiced veterinary medicine in Nebraska without a license. The district court ruled that it did not have the power to order the injunction sought by Roseberry while the matter was pending before the Department pursuant to the Department's proper exercise of statutory and regulatory authority. We affirm.

## I. FACTS

Roseberry was a licensed veterinarian in Iowa and Illinois when he moved to Omaha in May 1990 to practice veterinary medicine in Nebraska. He was informed by the Department that until he was able to take the Nebraska veterinary examination, he could practice veterinary medicine only under the supervision of a veterinarian with a Nebraska license. Initially, Roseberry complied with this condition, as he worked at an Omaha horseracing track under the supervision of another licensed veterinarian. In July, Roseberry left the Omaha racetrack and began working at a racetrack in Columbus, Nebraska, no longer under the supervision of a licensed veterinarian.

In response to concerns of other veterinarians about his practicing in Nebraska without a Nebraska license, Roseberry requested a temporary license from the Department on or about July 31, 1990. The temporary license was issued July 31. Subject to certain conditions, the temporary license was valid through January 31, 1991. Roseberry filed an application with the Department for a permanent license on or about July 30, 1990. The record does not indicate what documentation was required or whether all such documentation was filed with the initial application.

In a letter dated January 8, 1991, the Department informed Roseberry: "Your application for a license to practice Veterinary Medicine and Surgery in the State of Nebraska has been reviewed and accepted. The examination will be given on Tuesday, January 29, 1991. Your application is complete."

Roseberry took the January 29 examination. On January 31, Roseberry telephoned the Bureau of Examining Boards, the agency that administers examinations for the Department. He was informed that he had passed the examination. He also was given his veterinary license number over the phone. Later the same day, the coordinator for the Board of Examiners in Veterinary Medicine and Surgery telephoned Roseberry to inform him that a license would not be issued to him until the Department had investigated a complaint that Roseberry had practiced veterinary medicine in Nebraska without a Nebraska license. Roseberry was told over the phone that pursuant to 184 Neb. Admin. Code, ch. 1, § 004.01 (1983), of the Department's rules of practice and procedure, the Department had 150 days to decide whether to issue a license to him.

On February 7, 1991, Roseberry filed a petition for injunction in district court seeking "a temporary restraining order, temporary injunction, and permanent injunction upon proper hearing, restraining and enjoining the [Department] from . . . continuing to refuse to issue" to Roseberry a license to practice veterinary medicine. In addition to the petition for injunction, Roseberry filed a motion seeking a temporary restraining order without notice pursuant to Neb. Rev. Stat. § 25-1064 (Reissue 1989) on grounds that "immediate and irreparable injury . . . will result to [Roseberry] before this matter can be heard." In the motion, Roseberry claimed that the horseracing season would begin in less than a week and that the Department's delay in issuing a license to Roseberry would cost him an average of $1,478 a day in income.

The motion for a temporary restraining order was overruled on February 7. A hearing on what the district court referred to as the motion for temporary injunction was set for February 12. On February 12, the court found that Roseberry faced immediate and irreparable injury if the Department continued to refuse to issue a veterinary license to him and that Roseberry

had no adequate remedy at law. Therefore, the court granted the temporary injunction and ordered the Department to issue a license to Roseberry "forthwith, until further order of the Court."

On March 7, 1991, in response to the portion of Roseberry's petition seeking a permanent injunction, the Department answered that although Roseberry had satisfied the minimum statutory requirements for admission to the practice of veterinary medicine in Nebraska, the Department had reason to believe that Roseberry might have committed violations of the type set out in Neb. Rev. Stat. § 71-147 (Reissue 1990). Therefore, the Department asked the court to deny Roseberry's request for a permanent injunction and to dissolve the temporary injunction, thereby allowing the Department to exercise its discretionary authority pursuant to title 184 of the Department's rules of practice and procedure and reach a decision within 150 days on whether to issue a license to Roseberry.

On October 10, 1991, the State moved for summary judgment for the following reasons:

1. The Department of Health is authorized by law to exercise its discretion in determining when a license to practice veterinary medicine and surgery should be issued pursuant to Neb.Rev.Stat. §§71-104 and 71-147 (Reissue 1990).

2. The Director of the Department of Health has jurisdiction of proceedings to deny the issuance of a license to practice veterinary medicine and surgery pursuant to Neb.Rev.Stat. §71-150 (Reissue 1990).

3. The Department of Health has not exercised its discretion in regards to [Roseberry's] application for licensure to practice veterinary medicine and surgery.

4. The Court may not interfere or control the exercise of the [Department's] discretionary powers collaterally by ordering an injunction.

5. [Roseberry] has an adequate remedy at law if his application for license in veterinary medicine and surgery is denied in that [he] may appeal at the Department of

Health level and also appeal from there to the District Court pursuant to Neb.Rev.Stat. §84-917 (1990 Cum. Supp.).

6. The Department of Health has 150 days from the date an application is complete to act on said application pursuant to Title 184, Chapter 1, Section 004.01 of the Nebraska Administrative Code. Said regulation was duly promulgated by the Department of Health and statutorily authorized by Neb.Rev.Stat. §71-169 (Reissue 1990).

The Department asked the court to dissolve the temporary injunction and to cancel the license issued pursuant to the court order of February 12.

On November 15, the parties filed a joint stipulation stating that there were no genuine issues of material fact and that the matter would be submitted on the pleadings and attached materials previously filed in the case as well as on the trial briefs not yet filed at that time. On November 22, Roseberry filed a motion for summary judgment asking the court to continue the order of February 12 and grant a permanent injunction against the Department. On January 28, 1992, the court sustained the Department's motion for summary judgment and overruled Roseberry's. The court adopted almost verbatim the legal propositions proffered in the Department's motion for summary judgment, as set out above. The court found that Roseberry's application had not become complete until January 31, 1991, the date on which the results of the January 29 examination were included in his application file. Thus, the court found that Roseberry had sought an injunction during the 150-day period in which the Department was authorized to exercise its discretion with regard to the review and issuance of licenses. Citing *Leeman v. Vocelka*, 149 Neb. 702, 32 N.W.2d 274 (1948), the court ruled that the properly exercised discretionary authority of a state agency could not be attacked collaterally by a judicial order. The court dissolved the temporary injunction of February 12 and canceled the license issued pursuant to the order of February 12. The order of January 28, 1992, was stayed pending the outcome of this appeal.

## II. ASSIGNMENTS OF ERROR

We reach only two of Roseberry's four assignments of error, as they are dispositive of this appeal. Roseberry argues that the district court erred (1) in finding that the Department had 150 days from January 31, 1991, to determine whether to issue a license to Roseberry and (2) in finding that the Department may not be enjoined from exercising its discretion in determining whether to issue the license.

## III. STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in the light most favorable to the party against whom judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. See *Properties Inv. Group v. JBA, Inc.*, 242 Neb. 439, 495 N.W.2d 624 (1993).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See *id.*

An action for injunction sounds in equity. *City of Newman Grove v. Primrose*, 240 Neb. 70, 480 N.W.2d 408 (1992). Appellate review of an equity action is de novo on the record, and the appellate court makes findings of fact and law independent of those of the trial court. See *Dowd v. Board of Equal.*, 240 Neb. 437, 482 N.W.2d 583 (1992).

## IV. ANALYSIS

### 1. BEGINNING OF THE 150 DAYS

Section 004.01 of the Department's rules of practice and procedure states:

> An application for issuance or renewal of any license, permit, or certificate which the Department is empowered to grant or deny shall be made on forms provided by the Department. No application shall be considered to be formally complete for purposes of Departmental review unless and until it is accompanied by all supporting data,

> including a set of plans and specifications, as is necessary for proper review. Such application shall be acted upon within one hundred and fifty (150) days after its filing with the Department, and may be granted without the necessity of holding a public hearing thereon.

Agency regulations properly adopted and filed with the Nebraska Secretary of State have the effect of statutory law. See *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989). Section 004.01 has been properly filed and adopted with the Secretary of State. Thus, we construe § 004.01 as we would a statute, not reading into the regulation a meaning unwarranted by its plain language, but also not reading out of it anything plain, direct, and unambiguous. See *Matrisciano v. Board of Ed. of Sch. Dist. No. 6*, 236 Neb. 133, 459 N.W.2d 230 (1990). In addition, we are guided by the presumption that the Department intended a sensible rather than an absurd result.

■ Roseberry focuses on the last sentence of § 004.01 and argues that the 150-day period for discretionary review began to run on July 30, 1990, the day he filed his application materials for a permanent license. Taken by itself, the requirement that an application be acted on within 150 days after its filing does seem to support Roseberry's position. However, § 004.01 also indicates that an application is not ripe for departmental review until it is formally complete and that an application is not formally complete until all supporting data are included in the application file. Reading § 004.01 as a whole, we find that the 150-day discretionary period for departmental review of an application does not begin to run until all supporting data have been included in the application file, at which point the application is "formally complete" as that term is used in § 004.01.

There is no evidence in the record to support the contention that Roseberry's application was formally complete for purposes of departmental review on July 30, 1990. The first reference in the record to Roseberry's application being complete occurs in the January 8, 1991, letter from the Department. In that letter, the Department effectively said to Roseberry, "Although you have not yet taken the examination, your application is complete." Despite the plain language of the

letter, the Department argues that Roseberry's application could not possibly be complete without examination results. That is not true. An application could be complete *and a license could be issued* without examination results ever having been included in an applicant's file. See Neb. Rev. Stat. §§ 71-1,158 and 71-1,160 (Reissue 1990) (permitting the board of examiners in veterinary medicine to issue a veterinary license to an applicant without requiring the applicant to take the examination). However, the record as a whole indicates that Roseberry's admission to the practice of veterinary medicine was contingent on his passing the January 29, 1991, veterinary examination.

It is clear that under § 004.01, an application is not formally complete until all supporting data have been included in the application file. Obviously, Roseberry's examination results would have been crucial supporting data in his application file. Therefore, despite the misleading language in the Department's letter of January 8, we find that Roseberry's application was not formally complete for purposes of departmental review until the January 29 examination results were added to his application file. Therefore, the 150-day discretionary period began to run on January 31, 1991.

### 2. No Clear Right to Injunction

An injunction will not lie unless the right is clear, the damage is irreparable, and the remedy at law is inadequate. *State ex rel. Spire v. Strawberries, Inc.*, 239 Neb. 1, 473 N.W.2d 428 (1991).

The controlling case on this issue is *Leeman v. Vocelka*, 149 Neb. 702, 711, 32 N.W.2d 274, 279-80 (1948), from which we take the following excerpt:

"Where a statute gives a discretionary power to an officer to be exercised by him upon his own opinion of certain facts, he is the sole and exclusive judge of the existence of those facts; the courts will not attempt to interfere with or control the exercise of his discretionary powers, in the absence of any controlling provisions in the law conferring the power. . . . [T]he judiciary will not interfere with executive officers in the performance of duties which are

discretionary in their nature or involve the exercise of judgment. . . . [T]here exists no power in the courts . . . to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law reposes this discretion in him for that occasion, and not in the courts."

## V. CONCLUSION

As of January 31, 1991, Roseberry's application was properly before the Department for administrative review. The Department had until June 29, 1991, to exercise its judgment on Roseberry's application, during which time the district court had no power to interfere with the Department's discretionary authority over Roseberry's application. Therefore, we affirm the January 28, 1992, order of the district court sustaining the Department's motion for summary judgment, dissolving the temporary injunction of February 12, 1991, and canceling the license issued to Roseberry pursuant to the order of February 12.

AFFIRMED.