In re Application of Alberto Silva for Admission
to the Nebraska State Bar on Examination.
665 N.W.2d 592

Filed July 18, 2003.   No. S-34-020003.

Michael A. Nelsen, of Hillman, Forman, Nelsen, Childers &
McCormack, for applicant.

William T. Wright for Nebraska State Bar Commission.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan,
McCormack, and Miller-Lerman, JJ.

Per Curiam.
Alberto Silva appeals a decision of the Nebraska State Bar
Commission (Commission) denying his application to take the
July 2002 Nebraska bar examination. Silva contends that the
Commission erred in concluding that he did not meet the char-
acter and fitness requirements for admission.

FACTUAL BACKGROUND
Silva was born on September 11, 1964. He is divorced and
resides in Omaha with his minor daughter. From August 1991

until May 1995, Silva attended the University of Nebraska at Kearney. Silva majored in Spanish and criminal justice and received a bachelor of arts degree summa cum laude upon his graduation in 1995. Silva applied to Creighton University School of Law and was accepted in 1999. He graduated with a juris doctor degree in May 2002.

On his law school admission application, Silva gave an affirmative response to a question asking if he had "ever been convicted of any crime other than a minor traffic violation." As instructed in the application form, he attached a separate sheet listing the "dates, cause, outcomes, and circumstances" pertaining to his criminal convictions. This document disclosed that during a period from October 1988 until January 1995, Silva was convicted in the State of Colorado on misdemeanor charges of disturbing the peace, criminal mischief, fight by mutual consent (twice), consuming alcohol on state property, littering, driving while intoxicated, and third degree assault. Each conviction resulted in a fine ranging from $25 to $200, as well as probation and a license suspension on the driving while intoxicated conviction.

On or about March 26, 2002, Silva applied for admission by examination to the Nebraska bar. He responded affirmatively to a question on the application form which asked: "Have you ever, either as an adult or a juvenile, been cited, arrested, charged or convicted for a violation of any law (except moving traffic violations . . . and except minor parking violations)?" As instructed in the application, Silva attached forms providing detailed information concerning this response. These forms listed the convictions which Silva had disclosed on his law school application, plus 10 additional Colorado misdemeanor convictions preceding the date of that application. These included a conviction for third degree assault in 1979; three convictions for being a minor in possession in 1981, 1982, and 1983; a conviction on charges of flight to avoid arrest in 1982; a conviction for operating a motor vehicle to avoid arrest in 1983; two convictions in 1992 and 1993 for having no proof of insurance; a 1993 conviction for failing to stop and furnish information; and convictions for third degree assault and domestic violence in December 1995. In addition, Silva disclosed that he had been found not guilty on

Nebraska charges of assault and battery and disorderly conduct in April 2000 and convicted in Nebraska of driving under the influence in December of that year.

At about the time that Silva completed his application for admission to the bar, he informed Creighton University School of Law that he had given an incomplete account of his prior criminal history on his law school admission application. At the same time, Silva disclosed that he had previously applied unsuccessfully for admission to other law schools, but because of a misunderstanding, he had unintentionally omitted that fact when he responded to a question on the application form. Silva admitted to Creighton University School of Law officials that he intentionally omitted some of his misdemeanor convictions from his law school admission application because he feared that full disclosure would result in rejection of his application. After meeting to consider the information disclosed by Silva in 2002, the law school's admissions committee determined that it could not conclusively find that Silva would have been denied admission if the information had been disclosed at the time of his application. Patrick Borchers, the dean of the law school, advised Silva that on the basis of this determination, Silva would be permitted to remain in school to complete the requirements for his law degree and that the law school would advise the bar examiners of the matter.

Upon receipt of his application, the Commission advised Silva that it would continue its investigation into his character and fitness pursuant to Neb. Ct. R. for Adm. of Attys. 3 (rev. 2000). The Commission identified Silva's criminal and credit history as the areas of concern and scheduled an informal interview. Following the interview, the Commission, in a letter dated June 25, 2002, denied Silva's application to take the bar examination based upon what it perceived as "significant deficiencies" in several essential eligibility requirements enumerated in rule 3.

Silva requested a formal hearing to respond to the denial of his application. In response to Silva's request for clarification, the Commission provided Silva with a letter outlining its reasons for denial of permission to take the bar examination. The letter stated in relevant part:

1. You misrepresented to Creighton Law School in your law school application dated January 21, 1998, your criminal history in that you failed to disclose several important elements of that history and most importantly:

a. Your December, 1995, conviction in Case 95F002516, The People of the State of Colorado v. Alberto Silva, on charges of 3rd Degree Assault and Domestic Violence, both misdemeanors under Colorado law; and

b. A variety of misdemeanor/juvenile charges which occurred in the 1980's.

When questioned about these failures to disclose during the course of an informal interview before the Bar Commission on June 21, 2002, you advised that you purposely did not disclose this information because you believed that such disclosure would cause Creighton University to reject your application to law school. . . .

. . . .

2. Your criminal history as reflected in your application for admission and shown on the list attached hereto as Exhibit "A", and in particular that history which reflects either prosecutions or convictions for assault, demonstrate a less than adequate respect for the law generally during the course of the last fifteen years. . . .

. . . .

While you, in your interview before the Commission on June 21, 2002, expressed remorse for, and disapproval of, your prior violent lifestyle, an insufficient amount of time has passed in the opinion of the Commission to have allowed you to fully demonstrate that you presently have the ability to live within the bounds of the conduct expected of attorneys in the State of Nebraska.

On October 24, 2002, the Commission held a formal hearing on Silva's appeal. Catherine Mahern, director of the Creighton Legal Clinic, and Borchers, dean of the law school, testified on Silva's behalf. Both attested to Silva's good character and his fitness to practice law. Mahern testified that she became acquainted with Silva when he enrolled in the spring 2002 clinical program and that after his graduation, she hired Silva to work in the clinic on a part-time basis as a translator. Mahern described Silva's

demeanor as quiet, serious, and mature. She stated that Silva has a "good ear for facts," that he is "very compassionate," and that the clinic clients "appreciate him and enjoy working with him." Mahern testified that Silva's bilingual fluency was valuable to the clinic in addressing the legal needs of the South Omaha community. Mahern stated: "If I was the least concerned about [Silva's] future clients, I would be here testifying otherwise. But I'm not." She strongly recommended that the Commission grant Silva the opportunity to sit for the bar examination.

Borchers testified that in his opinion, Silva's character was such that he should be permitted to take the bar examination. Borchers stated that he was unaware of any reason why Silva could not be "put in a position of trust with other people's interests" and that in his opinion, Silva would pose no risk to his future clients. Borchers suggested, however, that because of Silva's previous misdemeanor convictions, it would be appropriate that his admission to the bar be on a probationary basis for a specified period of time. Borchers certified that Silva completed the requirements for his juris doctor degree on May 10, 2002, and that he was conferred that degree by the Creighton University School of Law on May 18, 2002.

Testifying on his own behalf, Silva stated that he is a role model for his daughter as well as his nieces and nephews. At the time of the hearing, Silva worked for the law school legal clinic, for a nonprofit immigration clinic known as Justice for Our Neighbors, and as an independent interpreter and translator for court hearings and social service agencies. Silva testified that there would be a need for his services as an attorney in the Hispanic community and that he was willing to accept any conditions on admission which the Commission deemed appropriate. Silva acknowledged making bad decisions in the past, but stated that he had reached a point in his life where such behavior would not be repeated. In support of his appeal, Silva submitted letters from legal educators, lawyers, judges, clergy, and others attesting to his good character and fitness to practice law.

By letter dated October 25, 2002, the Commission advised Silva that it had rejected his appeal, stating, "It is the decision of the commission that you have failed to show you possess the

proper character and fitness to be admitted to the bar of Nebraska at this time and your application to take the bar examination is herewith denied." Silva timely perfected his appeal of this decision to this court pursuant to Neb. Ct. R. for Adm. of Attys. 10 (rev. 2000).

## ASSIGNMENT OF ERROR

Silva assigns that the Commission erred in finding that he did not have sufficient good character to qualify to take the bar examination.

## STANDARD OF REVIEW

■ Under Neb. Ct. R. for Adm. of Attys. 15 (rev. 2000), the Nebraska Supreme Court considers the appeal of an applicant from a final adverse ruling of the Commission de novo on the record made at the hearing before the Commission. *In re Application of Converse*, 258 Neb. 159, 602 N.W.2d 500 (1999).

## ANALYSIS

■ The Nebraska Supreme Court is vested with the sole power to admit persons to the practice of law in this state and to fix qualifications for admission to the Nebraska bar. *In re Application of Converse, supra.* Nebraska statutory law further provides: "No person shall be admitted . . . unless it is shown to the satisfaction of the Supreme Court that such person is of good moral character." Neb. Rev. Stat. § 7-102(1) (Cum. Supp. 2002). We have delegated administrative responsibility for bar admissions solely to the Commission. *In re Appeal of Stoller*, 261 Neb. 150, 622 N.W.2d 878 (2001).

In rule 3 of our rules governing the admission of attorneys, we have described the applicable standards for character and fitness of attorneys as follows:

> An attorney should be one whose record of conduct justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them. A record manifesting a significant deficiency by an applicant in one or more of the following essential eligibility requirements for the practice of law may constitute a basis for denial of admission. In addition to the admission requirements otherwise established by these rules, the essential eligibility

requirements for admission to the practice of law in Nebraska are:

(a) The ability to conduct oneself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations;

(b) The ability to conduct oneself diligently and reliably in fulfilling all obligations to clients, attorneys, courts, and others;

(c) The ability to conduct oneself with respect for and in accordance with the law and the Code of Professional Responsibility;

(d) The ability to communicate clearly with clients, attorneys, courts, and others;

(e) The ability to reason, analyze, and recall complex factual information and to integrate such information with complex legal theories;

(f) The ability to exercise good judgment in conducting one's professional business;

(g) The ability to avoid acts that exhibit disregard for the health, safety, and welfare of others;

(h) The ability to use honesty and good judgment in financial dealings on behalf of oneself, clients, and others;

(i) The ability to comply with deadlines and time constraints;

(j) The ability to conduct oneself professionally and in a manner that engenders respect for the law and the profession.

Appendix A to our rules governing the admission of attorneys further clarifies the character and fitness standards and provides in part:

The primary purposes of character and fitness screening before admission to the bar of Nebraska are to assure the protection of the public and to safeguard the justice system. . . . The public is adequately protected only by a system that evaluates character and fitness as those elements relate to the practice of law. The public interest requires that the public be secure in its expectation that those who are admitted to the bar are worthy of the trust and confidence clients may reasonably place in their attorneys.

Our rules place on the applicant "the burden of proving good character by producing documentation, reports, and witnesses in support of the application." *Id.* "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for denial of admission." *Id.* Our character and fitness standards list the following as relevant conduct that should be treated as cause for further inquiry before the Commission decides whether an applicant possesses the character and fitness to practice law:

1. misconduct in employment;

2. acts involving dishonesty, fraud, deceit, or misrepresentation;

3. abuse of legal process, including the filing of vexatious lawsuits;

4. neglect of financial responsibilities;

5. neglect of professional obligations;

6. violation of an order of a court, including child support orders;

7. evidence of mental or emotional instability;

8. evidence of drug or alcohol dependence or abuse;

9. denial of admission to the bar in another jurisdiction on character and fitness grounds;

10. disciplinary action by an attorney disciplinary agency or other professional disciplinary agency of any jurisdiction. *Id.* When there is evidence that an applicant has engaged in any such conduct, the Commission is required to determine whether "the present character and fitness of an applicant qualify the applicant for admission" based on the consideration of the following factors:

1. the applicant's age at the time of the conduct;

2. the recency of the conduct;

3. the reliability of the information concerning the conduct;

4. the seriousness of the conduct;

5. the factors underlying the conduct;

6. the cumulative effect of the conduct or information;

7. the evidence of rehabilitation;

8. the applicant's positive social contributions since the conduct;

9. the applicant's candor in the admissions process;

10. the materiality of any omissions or misrepresentations.

*Id.*

Obvious and serious concerns in this case are the nature and frequency of Silva's misdemeanor offenses which amount to a history of assaultive behavior. This court and others have held that "abusive, disruptive, hostile, intemperate, intimidating, irresponsible, threatening, or turbulent behavior is a proper basis for the denial of admission to the bar." *In re Appeal of Lane*, 249 Neb. 499, 512, 544 N.W.2d 367, 375 (1996). In *In re Application of Majorek*, 244 Neb. 595, 605, 508 N.W.2d 275, 282 (1993), we adopted the principle that " '[a]lthough a prior conviction is not conclusive of a lack of present good moral character, particularly where the offense occurred a number of years previous to the applicant's request for admission, it adds to [the applicant's] burden of establishing present good character by requiring convincing proof of . . . rehabilitation.' " Quoting *In re Application of Allan S.*, 282 Md. 683, 387 A.2d 271 (1978). Although Silva's record includes several offenses committed as a juvenile, his most recent and most serious convictions in 1995 cannot be characterized as "the act of a naive and callow youth." See *In re Application of Majorek*, 244 Neb. at 603, 508 N.W.2d at 281. We further note that Silva had several alcohol-related misdemeanor offenses prior to beginning his law studies and a conviction for driving under the influence during his second year of law school. However, the record includes an outpatient chemical dependency evaluation dated April 19, 2001, which concludes that while Silva could benefit from an alcohol education program, he "does not meet criteria for treatment."

An additional factor reflecting adversely on Silva's character and fitness to practice law is his failure to fully disclose the extent of his prior misdemeanor convictions when he applied for admission to law school. We have noted that a similar lack of candor in completing an application for admission to the bar may constitute grounds for a finding of lack of requisite character and fitness. See *In re Application of Majorek, supra.* Silva eventually admitted his lack of candor to law school officials and forthrightly stated that he intentionally concealed portions

of his record out of fear that full disclosure would result in rejection of his application. However, Silva's admission did not occur until his final semester of law school, at a time when he probably realized that the information submitted in his bar application would reveal his previous concealment.

There is also evidence in the record, however, which reflects favorably on Silva's character and fitness. The testimony of Borchers and Mahern, as well as letters of support submitted by several of Silva's law professors and classmates, suggest that Silva was a diligent law student who developed strong and positive relationships with those around him. Of particular significance are Mahern's favorable observations of Silva's performance in a clinical setting during his final year of law school and her willingness to employ him as an attorney at the law school's legal clinic if he is admitted to the bar.

Other persons who have had contact with Silva in his role as an interpreter and translator share Mahern's favorable assessment of his character and fitness in letters written on his behalf which are included in the record. An attorney employed by the law school's legal clinic described Silva as "extremely competent and professional" while working as an interpreter in Douglas County courts. The clinic's office manager wrote that Silva treated "clients and associates respectfully and with consideration" and that he was "thorough," "prompt," and "very attentive to the details of his work" at the clinic. An Omaha attorney who worked with Silva at the clinic and in a subsequent volunteer position wrote that Silva "repeatedly demonstrated an exceptional level of integrity and honesty." A vocational rehabilitation counselor who utilized Silva as an interpreter for his Spanish-speaking clients wrote that Silva provided "timely, accurate, and highly professional interpreting services" and that if Silva were admitted to the bar, he would not hesitate to refer his clients who required legal assistance to Silva. A prosecutor who had utilized Silva's services as an interpreter described him as "professional, both in demeanor and appearance," and noted that Silva has "demonstrated fidelity to his oath as a translator and shown compassion for those to whom he provides service." A district judge who had observed Silva's performance as a senior certified law student and as an interpreter described him as "extremely professional, competent, responsible,

and . . . very well respected among the judges and court staff" and expressed his opinion that Silva should have an opportunity to sit for the bar examination.

Viewing the entire record, we conclude that the Commission did not err in determining that Silva should not be permitted to sit for the July 2002 bar examination. Silva's numerous misdemeanor offenses and his failure to fully disclose them at the time of his application for law school admission raised legitimate character and fitness issues which were of sufficiently recent origin that the Commission properly concluded in 2002 that Silva had not demonstrated "present character and fitness" to qualify for admission to the bar. However, we also conclude that Silva's transgressions should not permanently disqualify him from sitting for the bar examination for two basic reasons. First, Silva acknowledged and took full personal responsibility for his lack of candor in not fully disclosing his misdemeanor record on his law school application. Second, we are impressed by the high esteem in which Silva is held by educators, legal professionals, and others whom he has encountered as a student and court interpreter. These persons have publicly expressed their belief that Silva possesses the requisite character and fitness to serve the public as a lawyer, and we conclude that he should be given an opportunity to show himself worthy of that trust.

Accordingly, we conclude that Silva will be eligible to make application to sit for the Nebraska bar examination to be given in July 2004, 2 years after the examination for which he first applied. The application must be made in full compliance with Neb. Ct. R. for Adm. of Attys. 2, 3, and 4 (rev. 2000). If Silva makes application to sit for the July 2004 bar examination, or any subsequent examination, the Commission shall conduct a character and fitness investigation as it deems appropriate. However, unless such investigation discloses adverse character and fitness information which is not included in the present record, the Commission shall permit Silva to sit for the examination. Should the investigation disclose additional information reflecting adversely on character and fitness, the Commission shall follow its normal policies and procedures in evaluating the application, and Silva will have full rights of review under rule 10.

AFFIRMED WITH DIRECTIONS.