IN RE APPLICATION OF ROBERT TODD ROSEBERRY
FOR ADMISSION TO THE NEBRASKA STATE BAR
ON EXAMINATION.
704 N.W.2d 229

Filed October 7, 2005.    No. S-34-040001.

D.C. Bradford and Justin D. Eichmann, of Bradford & Coenen, for applicant.

Jon Bruning, Attorney General, Jennifer Tomka, and Heidi Karr Sleper and Chris Seifert, Senior Certified Law Students, for Nebraska State Bar Commission.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.
Robert Todd Roseberry appeals the denial of his application to take the Nebraska bar examination. The Nebraska State Bar Commission (Commission) determined that Roseberry had deficiencies in the character and fitness requirements for admission. We sustain the Commission's recommendation that Roseberry not be allowed to sit for the Nebraska bar examination.

## BACKGROUND
This appeal involves Roseberry's second application to take the Nebraska bar examination. The Commission notified him that his first application, filed in November 2000, would be denied because he did not meet the character and fitness requirements. He then withdrew the application instead of seeking a hearing to provide evidence and make a record for appeal. After the second denial in 2004, the Commission held a hearing and denied Roseberry's application because of character and fitness requirements.

### FAILURE TO REPORT LITIGATION
Roseberry admitted that he did not report several instances of litigation in his first application, including *Roseberry v. Wright*, 2 Neb. App. 248, 508 N.W.2d 867 (1993), and Ferretti v. Roseberry, Multnomah County Circuit Court, State of Oregon, No. A8201-00560. He did, however, report them on his second application.

The complaint in the Ferretti action alleges that Roseberry wrote unauthorized checks from Esmond F. Ferretti's account. Roseberry, however, filed an answer alleging that the funds were gifts. According to Roseberry, Ferretti was a family friend for whom Roseberry did odd jobs when he was between the ages of 12 and his early twenties. Ferretti gave him money for college but then wanted the money back when Roseberry chose to go to college out of town. Ferretti obtained a $20,000 judgment for conversion and breach of fiduciary duty. Roseberry testified that he paid about $10,000 of the judgment, but remained friends with Ferretti and never paid the rest. He stated that he forgot to include the litigation on his application because it had occurred 20 years ago and he was, at that time, affected by the stress of his divorce, a house fire, a business failure, and family medical issues.

In *Roseberry v. Wright, supra*, Roseberry took and passed the Nebraska veterinary examination, but the then Nebraska Department of Health refused to issue a license pending investigation into a complaint that he had practiced veterinary medicine without a license. Roseberry sought to enjoin the Department of Health from refusing to issue him a license. The court refused to issue an injunction, and the Nebraska Court of Appeals affirmed.

According to Roseberry, he obtained a temporary license in Nebraska and practiced under the supervision of a licensed veterinarian. A complaint arose when he began working at a racetrack without a veterinarian directly supervising him. Roseberry brought an injunction action. He stated that the Department of Health then gave him a permanent license, so he assumed the injunction action was successful. He stated he was unaware of the appeal because he believes his employer paid the attorney fees and costs in the action. The record also contains documentation of additional litigation involving Roseberry.

## Iowa Denial of Bar Application

In 2003, the Iowa Board of Law Examiners denied Roseberry's application for admission. The board noted that in his application, Roseberry failed to timely disclose that he had been denied admission in 2001 to the Nebraska bar because of

concerns about his character and fitness. It noted that although he had been allowed to withdraw his Nebraska application, he should have disclosed the initial denial. The application shows that Roseberry answered "[n]o" to the question whether he had ever been denied a position, certificate, or license that required proof of good character. Roseberry, however, testified that he believed he had provided the required information because he did note that he had applied for the Nebraska bar and had later withdrawn the application.

### VETERINARY LICENSE PROBATION AND
### OTHER LICENSE SANCTIONS

Roseberry holds veterinary licenses in Nebraska, Iowa, and other states. The Iowa Board of Veterinary Medicine placed him on probation from February 1991 to January 1992 and assessed a $250 civil penalty against him. The board alleged that he purchased 10 milligrams of Ritalin, a federally controlled substance, from a pharmacy by falsely representing that the drug was for a horse he owned.

Roseberry testified that Ritalan is often used with racehorses. According to Roseberry, the commonly accepted way to obtain a prescription is to write it for office use. However, when he went to the local drug store seeking seven Ritalan pills, he was told that he could not write a prescription for office use and that the pharmacy required a patient's name. Roseberry gave the name of the horse the Ritalan would be used for. According to Roseberry, he was told that although he could purchase Ritalin under a proper federal Drug Enforcement Agency license, by putting the horse's name down, he implied that he owned the horse. He entered into an informal settlement with the board for the fine and probation. No action was taken by the Drug Enforcement Agency.

### RACING COMMISSION SANCTIONS AND
### REVOCATION OF LICENSE

The record contains multiple rulings against Roseberry affecting his occupational licenses issued by the Iowa, Nebraska, and Kansas racing commissions. Racetracks regulate themselves through the use of the licenses and stewards, who

oversee activities at the racetracks. The stewards have the ability to investigate, conduct hearings, and issue sanctions.

The record contains an exhibit of the following violations, which we set out with minor revisions: (1) medical report violation; (2) Lasix administered to wrong horse; (3) unlabeled bottle; (4) medical report; (5) conduct detrimental to racing; (6) fighting; (7) failure to submit log; (8) medicated entry in error necessitating late scratch; (9) conduct detrimental to the best interest of racing—altercation in barn area; (10) failure to turn in medication report in timely manner; (11) administered Lasix to a horse that was "not a Lasix horse"; (12) medication in vehicle improperly labeled; and (13) conduct detrimental to best interest of racing—failed to remove tampon from nostril of horse before a race. The final violation led to a $1,000 fine. It also resulted in a 5-year suspension of Roseberry's Kansas license, which was lifted on appeal.

According to Roseberry, fines and other sanctions are common at racetracks and "happen to everybody every day." He stated that in many cases, he was fined for things he voluntarily disclosed and gave the example of providing Lasix to a horse that had been taken off the Lasix list when asked by the trainer to give the drug. Roseberry stated that although he reported the action, he was still fined. He said that often, items are listed as conduct detrimental to the best interest of racing but that no explanation is given. In other cases, he testified that there were no clear rules and provided the example of being cited for unlabeled medicine when no rule prohibited it. He also testified that he did not appeal most of the sanctions because sanctions are normally small and are accepted as the cost of doing business.

At the hearing, he addressed the Kansas Racing and Gaming Commission suspension. He stated that he had used a tampon to treat a cut in a horse's nose when he could not use medication and stitches because the horse was racing in a few days. He then reported it to the state veterinarian. According to Roseberry, the tampon should have fallen out before race day and if not, when the horse went to race, a paddock judge would see it as part of a tattoo check of the horse's lip. He also stated that the state veterinarian would come by the day of the race and should notice

it. According to Roseberry, the tampon was not in the horse's nose after the race. He was asked if he removed the tampon or had observed another do it, and he said no. At the hearing, he stated that he appealed the $1,000 fine and 5-year license suspension and that on review, the Kansas Racing and Gaming Commission determined that he did not act unethically or deceptively and that the commission dropped the suspension when he agreed to pay the fine. The ruling on that appeal, however, is not in the record.

### REVOCATION OF RACING COMMISSION LICENSE

In August 2001, the Iowa Racing and Gaming Commission revoked Roseberry's probationary vocational license. A notice granting the initial license stated that it was probationary because of a history of "various and serious rule violations at different racetracks from 1989 through 1994." It also noted that he had submitted a license application that failed to disclose a 1993 Nebraska suspension.

When the license was revoked, the Iowa board of stewards investigated treatment reports submitted by Roseberry that listed medication different from that detailed in his billing statements. The board found that during the investigation, Roseberry told stewards that the reports were different because sometimes he would perform procedures that the trainers did not want the owners to know about. The board found that he later failed to comply with a request to produce a log book. The board further found that he violated commission rules and that his conduct was "unethical, deceptive, objectionable, dishonest, [and] dangerous to the welfare of the public, racing participants, and the horses under [Roseberry's] care, and detrimental to the integrity of racing in the state of Iowa." The board also found other violations and noted actions on his license in Nebraska and that the Idaho Board of Veterinary Medicine had denied him a temporary permit application.

A stipulation to dismiss the appeal required that Roseberry not apply for a 2002 license and left open the resolution of issues raised in the revocation proceeding if he applied again. Although Roseberry disclosed the revocation and appeal in his

Nebraska bar application, he failed to disclose the finding that he had engaged in unethical conduct.

According to Roseberry, the license was probationary largely because he had been away from veterinary practice while attending law school. He stated that the notation about failing to report a suspension was an error by the Iowa Racing and Gaming Commission. His application for the Iowa license shows a Nebraska suspension in 1992. According to Roseberry, someone made a false representation about his recording and documenting prescription drugs at the racetrack. He testified that his license was initially removed without a hearing.

According to Roseberry, when a hearing was held, the board of stewards would not allow him to call witnesses and was told to "save it for the appeal." According to Roseberry, the drugs provided and the drugs billed were the same, but he may have written the common name on one document and the trade name or generic name on another because he used the common name with owners. Roseberry denies that he made any statements to the board of stewards about drugs being given and hidden from the owners and stated that he turned in his medication log books everyday.

Several people testified for Roseberry. A racehorse owner stated that sanctions at racetracks were common. He also stated that in his opinion, Roseberry was honest and ethical. A former classmate of Roseberry also testified that Roseberry had good moral character.

A veterinary assistant for Roseberry at the time of his license suspension testified that she had witnessed him refuse to do things that were unethical or against the racing rules, such as administer medication at the urging of a trainer on a race day. The assistant compared racetrack sanctions, especially at the track where Roseberry's license was suspended, to being like a "meter lady would give out parking tickets." She also supported his assertions that he turned in his medication log books and listed the same drug on the logs and in billing, but often with the common name used for the bill.

The Commission voted to deny Roseberry's application. Roseberry appeals.

## ASSIGNMENT OF ERROR

Roseberry assigns that the Commission erred by not allowing him the opportunity to take the Nebraska bar examination.

## STANDARD OF REVIEW

■ Under Neb. Ct. R. for Adm. of Attys. 15 (rev. 2000), the Nebraska Supreme Court considers the appeal of an applicant from a final adverse ruling of the Commission de novo on the record made at the hearing before the Commission. *In re Application of Silva*, 266 Neb. 419, 665 N.W.2d 592 (2003).

## ANALYSIS

■ This court is vested with the sole power to admit persons to the practice of law in this state and to fix qualifications for admission to the Nebraska bar. *In re Application of Silva, supra.* Nebraska statutory law further provides: "No person shall be admitted . . . unless it is shown to the satisfaction of the Supreme Court that such person is of good moral character." Neb. Rev. Stat. § 7-102(1) (Cum. Supp. 2004).

Neb. Ct. R. for Adm. of Attys. 3 (rev. 2005) governing the admission of attorneys describes the applicable standards for character and fitness of attorneys as follows:

> An attorney should be one whose record of conduct justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them. A record manifesting a significant deficiency by an applicant in one or more of the following essential eligibility requirements for the practice of law may constitute a basis for denial of admission.

In addition to the admission requirements otherwise established by these rules, the essential eligibility requirements for admission to the practice of law in Nebraska as recited in rule 3 are as follows:

> (a) The ability to conduct oneself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations;
>
> (b) The ability to conduct oneself diligently and reliably in fulfilling all obligations to clients, attorneys, courts, and others;

(c) The ability to conduct oneself with respect for and in accordance with the law and the Nebraska Rules of Professional Conduct;

. . . .

(f) The ability to exercise good judgment in conducting one's professional business;

(g) The ability to avoid acts that exhibit disregard for the health, safety, and welfare of others;

(h) The ability to use honesty and good judgment in financial dealings on behalf of oneself, clients, and others;

. . . .

(j) The ability to conduct oneself professionally and in a manner that engenders respect for the law and the profession.

Appendix A to the rules for the admission of attorneys further clarifies the character and fitness standards:

The primary purposes of character and fitness screening before admission to the bar of Nebraska are to assure the protection of the public and to safeguard the justice system. . . . The public is adequately protected only by a system that evaluates character and fitness as those elements relate to the practice of law. The public interest requires that the public be secure in its expectation that those who are admitted to the bar are worthy of the trust and confidence clients may reasonably place in their attorneys.

■■■ The rules place on the applicant " 'the burden of proving good character by producing documentation, reports, and witnesses in support of the application.' " *In re Application of Silva*, 266 Neb. 419, 426, 665 N.W.2d 592, 597 (2003). " 'A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for denial of admission.' " *Id*. The character and fitness standards of appendix A of the rules list the following as relevant conduct that should be treated as cause for further inquiry before the Commission decides whether an applicant possesses the character and fitness to practice law:

1. misconduct in employment;

2. acts involving dishonesty, fraud, deceit, or misrepresentation;

3. abuse of legal process, including the filing of vexatious lawsuits;

4. neglect of financial responsibilities;

5. neglect of professional obligations;

6. violation of an order of a court, including child support orders;

. . . .

9. denial of admission to the bar in another jurisdiction on character and fitness grounds;

10. disciplinary action by an attorney disciplinary agency or other professional disciplinary agency of any jurisdiction.

When evidence shows that an applicant has engaged in conduct requiring further inquiry, the Commission must determine whether "the present character and fitness of an applicant qualify the applicant for admission" based on the consideration of the following factors:

1. the applicant's age at the time of the conduct;

2. the recency of the conduct;

3. the reliability of the information concerning the conduct;

4. the seriousness of the conduct;

5. the factors underlying the conduct;

6. the cumulative effect of the conduct or information;

7. the evidence of rehabilitation;

8. the applicant's positive social contributions since the conduct;

9. the applicant's candor in the admissions process;

10. the materiality of any omissions or misrepresentations.

*Id.*

## LACK OF CANDOR ON BAR APPLICATIONS

■ In his applications to the Nebraska and Iowa bars, Roseberry showed a disturbing pattern of conduct—a lack of candor. False, misleading, or evasive answers to bar application questions may be grounds for a finding of lack of requisite character and fitness. *In re Application of Silva, supra*; *In re Application of Majorek*, 244 Neb. 595, 508 N.W.2d 275 (1993). The concern becomes heightened when the omitted items

involve character and fitness issues. Here, Roseberry initially omitted on his Nebraska application instances of litigation that (1) specifically included a judgment for conversion and breach of fiduciary duty and (2) involved a complaint about his veterinary license. In addition, on his Iowa application, he failed to inform the Iowa Board of Law Examiners that he had been notified that his Nebraska application would not be accepted because of issues concerning his character and fitness. Finally, he failed to disclose that when the Iowa Racing and Gaming Commission revoked his probationary veterinary license, it found that he had engaged in unethical conduct.

We find Roseberry's parade of excuses unpersuasive. His explanation that he "forgot" a $20,000 judgment because it was old and he was under stress lacks credibility. See *In re Application of Majorek, supra.* Likewise, his claim that he believed he had provided the required information to the Iowa Board of Law Examiners withers when exposed by the record. The record shows that Roseberry knew that the Commission in Nebraska denied his application on character and fitness grounds and that after he was denied, he was allowed to withdraw the application. Yet, he still answered "no" to the question asking whether he had ever been denied a position, certificate, or license that required proof of good character. Roseberry appears to have no explanation for his omission of the Iowa Racing and Gaming Commission's finding. We find that Roseberry either failed to accurately complete his applications or deliberately tried to conceal the issues. As we have noted, "[n]either is comforting." See *In re Application of Majorek,* 244 Neb. at 604, 508 N.W.2d at 281.

### SANCTIONS IMPOSED BY PROFESSIONAL BOARDS AND LITIGATION

Roseberry's numerous sanctions against his professional licenses and a court finding that he breached a fiduciary duty trigger alarm bells.

Some offenses were never adequately explained. For example, in two instances, Roseberry was sanctioned for "fighting" and for an "altercation in barn area." We have held that " 'abusive, disruptive, hostile, intemperate, intimidating, irresponsible,

threatening, or turbulent behavior is a proper basis for the denial of admission to the bar.'" *In re Application of Silva*, 266 Neb. 419, 427, 665 N.W.2d 592, 598 (2003). Yet, other than a brief mention on his bar application, Roseberry fails to adequately explain these incidents.

In one instance, the Iowa Racing and Gaming Commission noted Roseberry's history of "various and serious rule violations at different racetracks from 1989 through 1994." The commission also noted the board of stewards' finding that his conduct was "unethical, deceptive, objectionable, dishonest, [and] dangerous to the welfare of the public . . . and detrimental to the integrity of racing in the state of Iowa." Although Roseberry attempts to explain the incidents and contends that racetrack sanctions are akin to the "normal cost of doing business," the sheer number of offenses undermines his credibility. Roseberry's lack of candor and numerous sanctions are impossible to ignore and speak strongly against his fitness and character to practice law.

Finally, we find a lack of rehabilitation. Although Roseberry had witnesses testify about his good character, the record shows a long history of questionable conduct. We find no persuasive evidence that Roseberry's character has changed or that he has been rehabilitated.

Because of the numerous instances of professional sanctions, litigation, and failure to reveal required information, we determine that the Commission did not err when it denied Roseberry's application. The record shows a consistent pattern of misconduct and a lack of candor, and we find his excuses unpersuasive. The recommendation of the Commission to deny Roseberry's application is affirmed.

APPLICATION DENIED.